The AETNA CASUALTY & SURETY COMPANY, Appellant,

v.

Anna ·Marie JENNUSA, Appellee.

No. 7256.

Court of Civil Appeals of Texas, Beaumont.

June 17, 1971.

Rehearings Denied July 29, 1971.

Rienstra, Rienstra & Dowell, Beaumont, for appellant.

Mitchell & Doran, Houston, for appellee.

KEITH, Justice.

Our prior opinion in this cause is withdrawn and the following substituted in lieu thereof.

We consider an appeal from a judgment which awarded the maximum death benefits under the Workmen's Compensation Law, plus $3,086.25 for medical expenses to the widow of the deceased workman. The judgment is based upon a claim of an occupational disease, asbestosis, made under the provisions of Article 8306, §§ 20–26, V.A. C.S.

The widow-plaintiff testified that the deceased had been an asbestos worker during all of the thirty-five years of their married life. A fellow worker, Pete Cappadonna, had worked with Jennusa as an asbestos worker on many jobs over a period of twenty-nine years. He testified that deceased had worked exclusively in Texas as an asbestos worker for more than the last ten years of his life. Jennusa's foreman testified that during the seven-month period of deceased's last employment with the employer, Armstrong, in the DuPont Plant, deceased was working with asbestos material. Both Mooney (deceased's foreman) and Cappadonna described the work done by Jennusa and each testified that when the insulating material was unpacked it gave off dust; that it was frequently necessary to saw the prefabricated lengths to fit the particular pipe area to be covered; and that it was impossible to do so without causing dust to be given off, which the em-

ployees were forced to breathe. Both agreed, however, on cross-examination that the dust was not as severe on the outside jobs, where Jennusa was employed, as it was in the shop where the materials were prepared for use in the field.

Jennusa's last day of employment was December 15, 1967, when he quit because he was ill. He was treated by Dr. Tritico in Port Arthur and was hospitalized on February 16, 1968. On March 1, 1968, during the course of an operation, it was found that Jennusa had a carcinoma and asbestosis of the lung. He died on March 12, 1968, and the death certificate indicated that the cause of death was congestive heart failure. In Dr. Tritico's opinion the asbestosis in all reasonable medical probability was a contributing or producing cause of the carcinoma of the lung, as well as of his death.

Jennusa had worked for his employer, Armstrong Contracting and Supply Corporation, in the DuPont Plant at Beaumont for some seven months before his termination date, December 15, 1967. The statements as to wages withheld showed that he had earned more than $7,300.00 while working for Armstrong during 1967, and had earned more than $2,100.00 during the same year while working for another insulating contractor.

The jury found, in response to the several special issues submitted, that: (1) Jennusa was "injuriously exposed to the hazards of asbestosis" while employed by Armstrong; (2) that during the ten-year period preceding the "beginning date of his incapacity," Jennusa "was injuriously exposed to the inhalation of asbestos dust over a period of not less than five years"; (3) that he contracted asbestosis as a result of such exposure; (4) that such asbestosis "was due to the nature of an employment in which the hazards of such disease actually existed, and were characteristic thereof and peculiar to the trade, occupation, process or employment"; (5) that such asbestosis "was actually incurred in"

the employment inquired about in No. 4; (6) that such asbestosis was "a producing cause of his lung cancer and resulting death"; (7) that his last injurious exposure to the hazards of asbestosis was December 15, 1967; (8) which was the beginning date of "incapacity from such asbestosis"; (9) that the "first distinct manifestation of such asbestosis" was March 3, 1968.

Without going into detail, it is sufficient to state that appellant has points which challenge the verdict upon almost every available ground, including "no evidence," "insufficient evidence," and against the "great weight and preponderance" of the evidence points.

In passing upon the several points, we bear in mind the rule which requires that in our review of the no evidence points, we look only to the evidence favorable to the verdict; and, in reviewing the insufficient evidence points, we weigh all of the evidence offered upon the trial. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). A short resume of the statutory provisions may be helpful in placing the jury's verdict in focus with the applicable statute.

Article 8306, § 20, V.A.C.S. reads in part as follows:

"Wherever the terms 'injury' or 'personal injury' are used in the Workmen's Compensation Law of this state, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. * * * such terms shall also be construed to mean and include occupational diseases, as hereinafter defined. The following diseases only shall be deemed to be occupational diseases:

\* \* \* \* \* \*

"(n) asbestosis"

In § 25, the Legislature recognized that the onset of occupational diseases (as op-

posed to accidental injuries) cannot be traced to a definite time and place because many, if not all, of such diseases are insidious and slow in developing and, in fact, require many years of exposure to the toxic or causative agent before symptoms appear and the disease or condition can be diagnosed. See in this connection, Stephenson, "Death and Injury from Inhalation of Asbestos Dust", 4 Texas Trial Lawyers Forum 17 (1970). Where, as here, the employee has had several employers over a period of many years, his burden of proof on cause and effect is fixed by the provision of § 24 which provides:

"Where compensation is payable for an occupational disease, the employer in whose employ the employee was last injuriously exposed to the hazards of such disease shall be deemed the employer within the meaning of the Act."

Section 25 denies compensation unless the occupational disease was due to:

"* * * the nature of an employment in which the hazards of such disease actually exist, and are characteristic thereof and peculiar to the trade, * * * or employment, * * *"

And further:

"* * * unless incapacity or death results within three (3) years in the case of * * * asbestosis after the last injurious exposure to such disease in such employment, * * *"

Section 26(a) defines "asbestosis" as:

"* * * the characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust."

Section 26(b), recognizing that the onset of asbestosis is a slow process requiring continued exposure, sets forth a minimum time which the employee must have worked in the industry (exposed employment). Compensation is denied * * *

"* * * unless during the ten (10) years immediately preceding the date of incapacity the employee has been exposed to the inhalation of * * * asbestos dust over a period of not less than five (5) years, two (2) years of which shall have been in this state, * * *"

■ Dr. Tritico testified that asbestosis can be acquired only by breathing asbestos dust over an extended period of time; and, the fact that Jennusa had asbestosis is conceded by appellant.[1] It is likewise clear in our record that Jennusa had been employed as an insulator all of his adult life and was engaged in work with materials containing asbestos. Cappadonna named several materials with which Jennusa worked on the Armstrong job, but upon cross-examination admitted that he did not have actual personal knowledge that each particular item of material contained asbestos. However, appellee's witness Mooney named one material used by his crew which contained 12 per cent silicate.[2] From this premise, coupled with the fact that Jennusa worked in the field as distinguished from working in the shop, appellant argues that appellee has failed to establish her right to recover. Particular emphasis is placed upon the fact that there was no expert or opinion evidence that he breathed the asbestos dust while upon the Armstrong job, his last exposure thereto. Appellant says that it "would even go so far as to say that it would seem that expert testimony would be needed to make such proof." We disagree. Two fellow workmen, both with wide and extensive experience in the field, testified that Jennusa was exposed to and had to breathe asbestos dust. They even named some of the brands of materials with which he was working which they said con-

---

1. Appellant says in its brief: "That Jennusa had asbestosis and lung cancer on March 1, 1968, cannot be disputed since his chest was cut open and it was actually seen by the pathologist." (Brief, p. 92)

2. Dorland's Medical Dictionary defines asbestos as "fibrous magnesium and calcium silicate."

tained asbestos, and there was no controverting evidence introduced.

We have studied carefully Justice Garwood's opinion in Texas Employers' Insurance Ass'n v. Etheredge, 154 Tex. 1, 272 S.W.2d 869, 874–875 (1954), and are of the opinion that the contention so advanced by the insurer is not in accord with either the letter or the spirit of § 24 of the Act. See also, Charter Oak Fire Insurance Company v. Perez, 446 S.W.2d 580, 585 (Tex.Civ. App.—Houston, 1st, 1969, error ref., n. r. e.). The question was one for the jury and it has been determined adversely to the insurer. From our review of the evidence, we find that the verdict is supported by the testimony. And, to paraphrase Justice Garwood's language in *Etheredge*, since the matter is "for the Court of Civil Appeals under a proper assignment of 'against the great weight of the evidence' ", we have so considered the matter and overrule appellant's contentions.

■ We are in substantial agreement with appellant's analysis of § 25 as to the injured workman's burden in this type of case. Appellant says:

"Under ARTICLE 8306, SECTION 25, there must be proof by Appellee that: (1) asbestosis is due to the nature of the deceased's employment in which its hazards actually exist; (2) such hazards are characteristic of such employment; (3) such hazards are peculiar to Jennusa's trade; (4) the asbestosis suffered by Jennusa was actually incurred in such employment; (5) Jennusa became incapacitated or died within three years after his last injurious exposure to asbestos in such employment."

However, subdivision 4 of this analysis is, in our opinion, an overly broad statement of a claimant's burden. The very nature of the disease, and indeed the reason for the enactment of the legislation, was to bring about a change in the law so as to protect workmen in such occupations from the insidious onset of specified diseases as distinguished from the classic "accidental injury." See Solomon v. Massachusetts Bonding and Insurance Co., 347 S.W.2d 17, 19 (Tex.Civ.App.—San Antonio, 1961, error ref.), for a discussion of the distinction.

The legislative enactment making provision for the payment of workmen's compensation benefits to the victims of occupational diseases was a forward step in placing the burden where it properly belongs. We honor the well-established rule that "this remedial statute * * * should be liberally construed with a view to accomplish its purpose and to promote justice." Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 74 (1922); Shelton v. Standard Insurance Company, 389 S.W.2d 290, 293 (Tex.1965).

■ From our review of the record and the statute covering employees such as Jennusa, we are of the opinion that the widow discharged her burden of showing that Jennusa's death was compensable within the meaning of the Act. It would, therefore, serve no useful purpose to review each of the hypertechnical points under which appellant attacks the findings of the jury. Appellant's points one through seventy-eight, inclusive, are overruled.

■ In its seventy-ninth and eightieth points, appellant contends that it was error for the trial court to overrule its objections to the submission of the issue on medical expenses.[3] The complaint is directed to the fact that no prior issue was submitted inquiring if appellant had refused to furnish medical attention after notice that the deceased was suffering from asbestosis. We overrule the points on the authority of Texas Employers' Insurance Ass'n v.

---

3. The right of the widow-plaintiff to recover the medical expenses incurred in the treatment of her husband is not squarely presented by our record. Cf. Texas Employers' Ins. Ass'n v. Herron, 29 S.W.2d 524, 529 (Tex.Civ.App., Waco 1930, error dism.). See also, Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969, 972 (1943).

Steadman, 415 S.W.2d 211, 217 (Tex.Civ. App., Amarillo, 1967, error ref., n. r. e.), wherein then Chief Justice Denton collated the authorities upon the subject. See also, Harleysville Mutual Insurance Co. v. Frierson, 455 S.W.2d 370, 373 (Tex.Civ.App., Houston, 14th, 1970, no writ).

Appellant's last three points attack the judgment which awarded the widow $3,086.25 for medical and hospital expenses incurred by Jennusa during his terminal illness. The eighty-first point brings forward a "no evidence" point, while the eighty-second asserts error in overruling the amended motion for new trial because there was "insufficient evidence" to support the jury's finding. The last point contends that it was error for the trial court to overrule the amended motion for new trial because the finding was contrary to the great weight and preponderance of the evidence. Each of these points has a firm foundation in the amended motion for new trial.

The trial was short—only three witnesses being offered in person and one by deposition. When plaintiff offered in evidence the medical and hospital bills which had been identified previously in connection with Dr. Tritico's deposition, defendant objected in part as follows:

"* * * further, they [the bills] have not been shown to be reasonable and necessary in connection with such occupational disease."

The objection was overruled and the bills admitted into evidence.

Appellant attacks the hospital bill by saying:

"Nowhere was it ever proven that this charge [of the hospital] was either *reasonable* or *customary*. The closest Appellee got was to obtain an affirmative answer from Dr. Tritico that he had an opinion as to whether said $2,246.25 represented the reasonable and customary charges for like or similar services in the vicinity where rendered. *But never did Dr. Tritico give his opinion as to this!*

Therefore, of the $3,086.25 awarded to the Appellate by virtue of the jury's answer to Special Issue No. 10, $2,246.25 thereof is without support in the evidence." (Emphasis in brief)

■ We agree with appellant that Dr. Tritico's affirmative answer to Interrogatory No. 39 inquiring if he had an opinion as to the amount of the hospital bill being "reasonable and customary" qualified him to express that opinion—not that in his opinion such sum was reasonable and customary. We have no doubt but that Dr. Tritico would have answered the next question that such bill was reasonable and customary, had the question been propounded. But, no such question having been asked, we have no such answer in our record.

■ Under the record as presented to us, it is clear that appellant's points now under consideration are meritorious. Plaintiff labored under the burden of establishing that the medical treatment and hospitalization of her deceased husband was necessary and that the charges therefor were reasonable and proper. See Petroleum Casualty Co. v. Green, 11 S.W.2d 388, 391 (Tex.Civ.App.—Waco, 1928, error ref.), wherein the court said: "There was no testimony that said charges were reasonable. Such proof was necessary before a recovery could be properly awarded."

Assuming plaintiff's right to recover for the medical expenses [see footnote 3, supra], there was no evidence that the charges for such treatment and hospitalization furnished the deceased workman were reasonable. It follows, therefore, that the trial court erred in permitting a recovery therefor.

It is apparent that the evidence was not fully developed upon the trial of the cause; however, upon oral submission of the cause, counsel for the widow-plaintiff suggested that if only the last three points of appellant were sustained, we should require a remittitur so as to eliminate $3,086.25 from the judgment and affirm the award of the compensation. Having found no error in

the proceedings other than for the award of the medical and hospital expenses, we accordingly affirm, conditionally, the judgment of the trial court. If the appellee shall, within ten days after the date of this judgment, remit the sum of $3,086.25 together with interest thereon from the date of the judgment below, the judgment of the trial court will be affirmed; otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial. Costs in the trial court are assessed against appellant; costs of appeal are assessed three-fourths against the appellant and one-fourth against the appellee.

Affirmed conditionally.