571 A.2d 398

Dorothy SAMARIN, Executrix of the Estate of Jack G. Samarin, deceased and Dorothy Samarin, in Her own Right, Appellant,

v.

GAF CORPORATION; Raymark Industries, Inc.; Celotex Corporation, Successor–In–Interest to Philip Carey Manufacturing Company; Philip Carey Corporation; Briggs Manufacturing Company and/or Panacon Corporation; Keene Building Products Corporation; Eagle–Picher Industries, Inc.; Owens–Corning Fiberglas Corporation Owens–Illinois, Inc.; Garlock, Inc.; A–Best Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc.; Nicolet Industries, Inc.; Successor–In–Interest to Keasby & Mattison; H.K. Porter Company, Inc.; Successor–In–Interest to Southern Textile Company, formerly Southern Asbestos Company; Pittsburgh Gage & Supply Company; Gateway Industrial Supply and Abex Corporation, Appellees.

Robert L. CARTWRIGHT and Arglye Cartwright, his Wife, Appellants,

v.

GAF CORPORATION; Raymark Industries, Inc.; Celotex Corporation, Successor–In–Interest to Philip Carey Manufacturing Company; Philip Carey Corporation; Briggs Manufacturing Company and/or Panacon Corporation; Keene Building Products Corporation; Owens–Corning Fiberglas Corporation Owens–Illinois, Inc.; Garlock, Inc.; A–Best Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc.; Nicolet Industries, Inc.; Successor–In–Interest to Keasby & Mattison; H.K. Porter Company, Inc.; Successor–In–Interest to Southern Textile Company, formerly Southern Asbestos Company; Pittsburgh Gage & Supply Company; Gateway Industrial Supply and Abex Corporation, Appellees.

Marcia BYERS, D.B.N., C.T.A., Administratrix of the Estate of Early Byers, deceased and John E. Byers, Marcia E. Byers, and Mark A. Byers, Executors of the Estate of Mary Byers, deceased, Appellants,

v.

GAF CORPORATION in its own Right as Successor–In–Interest to the Ruberoid Company; Raymark Industries, Inc., in its own Right and Successor–In–Right to Raybestos–Manhattan, Inc.; Celotex Corporation in its own Right and Successor–In–Interest to the Philip Carey Manufacturing Company; Philip Carey Corporation; Briggs Manufacturing Company and/or Panacon Corporation; Keene Corporation in its own Right and as Successor–In–Interest to Baldwin Hill Co.; Baldwin–Ehret–Hill, Inc.; Ehret Magnesia Manufacturing Company and to the Insulation Division of Mundet Cork Company, to Mundet Company and to Keene Building Products Corporation Owens–Corning Fiberglas Corporation Owens–Illinois, Inc.; Garlock, Inc.; A–Best Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc., in its own Right and as Successor–In–Interest to Armstrong Cork Co., and Armstrong Contracting and Supply Co.; Nicolet Industries, Inc., in its own Right and Successor–In–Interest to Keasby & Mattison, Co.; H.K. Porter Company, Inc., in its own Right as Successor–In–Interest to Southern Textile Company, formerly Southern Asbestos Company; the Gage Company, formerly Pittsburgh Gage & Supply Company; Gateway Industrial Supply and Abex Corporation, Friction Products Division, Appellees.

Superior Court of Pennsylvania.

Argued April 12, 1989.

Filed Sept. 28, 1989.

Reargument Denied March 22, 1990.

Theodore Goldberg, Pittsburgh, for Samarin, appellant (at 1247); Cartwright, appellants (at 1345); and Byers, appellants (at 1346).

Miles A. Kirshner, Pittsburgh, for Eagle–Picher, appellee (at 1247); participating party (at 1345 and 1346). Concetta Silvaggio, Pittsburgh, for A–Best, appellee (at 1247, 1345 and 1346).

Dale K. Forsythe, Pittsburgh, for Gateway Industrials, appellee, (at 1247, 1345 and 1346).

Thomas J. Michael, Pittsburgh, for Owens–Corning, appellee (at 1247, 1345 and 1346).

Thomas K. Lammert, Jr., Pittsburgh, for GAF Corporation, appellee (at 1247, 1345 and 1346).

L. Jane Charlton, Pittsburgh, for Celotex, appellee, (at 1247, 1345 and 1346).

Martin Greitzer, Philadelphia, amicus curiae.

Before ROWLEY, BECK and MONTGOMERY, JJ.

BECK, Judge:

The instant matter before this court involves the consolidated appeals of three sets of plaintiffs/appellants in asbestos related actions. Summary judgment was granted to multiple defendants in all three cases. We will first address the issues central to the resolution of all three appeals and then apply our findings to the facts of each particular case.

The general factual and procedural background of the three actions at issue are similar. Appellant Cartwright, Jack Samarin, the deceased husband of appellant Dorothy Samarin, and Earl Byers, the deceased father of appellants Marcia Byers, John Byers and Mark Byers worked for Babcock & Wilcox Corporation (B & W) in Beaver County. They worked within various of B & W's manufacturing facilities. B & W is a huge manufacturing business with a number of plants and buildings housing its various operations. In the manufacturing buildings there are procedures

that call for operations at high temperatures. Appellants allege that a number of asbestos laden products were used throughout B & W's facilities at locations where temperatures reached great heights. Though neither Cartwright, Byers or Samarin worked with asbestos directly, they were exposed to asbestos dust released from the surrounding asbestos products used to control temperatures within B & W's facilities.

After taking the depositions of appellants, appellees in these cases filed motions for summary judgment claiming that the appellants could not establish that appellants or their decedents were exposed to the particular products of appellees. Appellants responded with affidavits and depositions of various workers at B & W regarding the use by appellants of asbestos products in the locations where appellants or their decedents worked. In addition, in answers to interrogatories appellants included lists of names of persons who would testify that the appellants or their decedents were exposed to certain asbestos products manufactured by appellees. Appellees argue that appellants' affidavits, depositions and answers to interrogatories do not provide evidence to show the necessary connection between their products and any alleged injury sufficient to establish liability and in some cases do not even provide sufficient evidence to establish that the products that allegedly caused the harm contained asbestos. The trial courts concluded there was no practical need for oral argument in the numerous B & W asbestos cases and granted summary judgment in favor of appellees.

The following issues are raised on appeal: (1) whether answers to interrogatories listing the names of persons who could identify products causing harm to appellants or their decedents is sufficient to defeat a motion for summary judgment; (2) whether tradesmen may testify as to whether a product contains asbestos based on the fact that the product can withstand high temperatures and/or that other tradesmen may have told them that the products contained asbestos; (3) whether the totality of the evidence offered in

appellants' response to the motions for summary judgment meets the strict requirements set forth by this court in *Eckenrod v. GAF Corporation,* 375 Pa.Super. 187, 544 A.2d 50 (1988); and (4) whether the trial court erred in foregoing oral argument.

We begin by reviewing the standards governing summary judgment and then address those questions common to all three appeals before looking to the specific facts of each case where necessary.

A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). .... In passing upon a motion for summary judgment the court must examine the record in the light most favorable to the nonmoving party.... It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried.... Any doubt must be resolved against the moving party.... The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings.... The court must restrict its review to the material authorized by Rule 1035 to be filed in support of and in opposition to the motion for summary judgment and *only* those allegations in the pleadings that are uncontroverted.

*Washington Federal Savings and Loan Association v. Stein,* 357 Pa.Super. 286, 288, 515 A.2d 980, 981 (1986) (citations omitted).

■ Once a motion for summary judgment is made and is properly supported [1], however, the non-moving party may

---

**1.** The means for supporting a motion for summary judgment are set forth in Pa.R.C.P. 1035(a):

After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

not simply rest upon the mere allegations or denials in his or her pleadings. Pa.R.C.P. 1035(d). In such a case, Rule 1035(d) requires that "by affidavits or as otherwise provided in this rule, [the non-movant] must set forth specific facts showing that there is a genuine issue for trial."[2] The purpose of Rule 1035(d) " *'is to assure that the motion for summary judgment may "pierce the pleading" and to require the opposing party to disclose the facts of his claim or defense.'* " *Roland v. Kravco, Inc.*, 355 Pa.Super. 493, 501, 513 A.2d 1029, 1034 (1986) (quoting Goodrich Amran 2nd § 1035(d):5 at 460 (1976) (emphasis added by *Roland* court), *appeal denied*, 517 Pa. 599, 535 A.2d 1058 (1987). Thus, once the motion for summary judgment has been properly supported, the burden is upon the non-movant to disclose evidence that is the basis for his or her argument resisting summary judgment. *Id.*, 355 Pa.Superior Ct. at 501, 513 A.2d at 1034.

The *Roland* court made clear that where there are witnesses who could allegedly state facts that would support the non-movant's claim, but have not yet done so, it is the non-movant's burden to establish those facts on the record to show that there exists a genuine issue of material fact. *Id.* The court specifically rejected the notion that it was the movant's burden to obtain statements from witnesses named by the non-movant whose testimony would allegedly support the non-movant's case once given. *Id.* As the *Roland* court observed, "[o]ur rules of civil procedure are

**2.** Pa.R.C.P. 1035(d) provides in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

We also note here that Pa.R.C.P. 1035(e) provides that where by affidavit the non-movant states that he or she is unable to respond with essential facts to the motion for summary judgment, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." In this case, the appellants made no motion to the trial courts indicating that facts essential to their arguments opposing summary judgment were not present before those courts.

designed to eliminate the poker game aspect of litigation and compel the players to put their cards face up on the table before the trial begins." *Id.; see also Paparelli v. GAF Corporation,* 379 Pa.Super. 62, 549 A.2d 597 (1988).

Our first inquiry is whether answers to interrogatories listing the names of persons who could identify products causing harm to appellants or their decedents is sufficient to defeat a motion for summary judgment. In all three of the instant cases, appellants received interrogatories asking for the names of any persons who could given information on appellants' or their decedents' exposure to asbestos. Samarin supplied a list with twenty-five names, Byers a list with one hundred and thirty-three names and Cartwright a list with one hundred and thirty-two names; with one addition, this list being identical to Byers'. The lists were structured to provide a person's name, address, the years worked at B & W, in some cases the jobs performed for B & W, and a list of names of asbestos manufacturers and suppliers that each person could apparently identify as having supplied asbestos containing products to B & W. These responses to the interrogatories do not include any information on the relationship of any of the persons listed to appellants or their decedents or the relationship of the listed asbestos containing products to appellants or their decedents. Under *Roland v. Kravco Inc., supra,* it is appellants' burden to be more specific and to reveal the relevant facts that these witnesses would testify to. From these facts, the trier of fact should be able to deduce that the listed person had some knowledge of the appellant's work place and some knowledge that appellants were exposed to appellees' products which contained some asbestos. It is not appellees' burden to depose each potential witness for the purpose of showing that they are not able to establish a relationship between appellants or their decedents and appellees' products. Not having established this relationship themselves, appellants leave themselves exposed to summary judgment in favor of appellees. *Ro-*

*land v. Kravco Inc., supra,* 355 Pa.Super. at 501, 513 A.2d at 1034.

■ Our next inquiry is whether tradesmen may testify as to whether a product contains asbestos based on the fact that the product can withstand high temperatures and/or that other tradesmen may have told them that the product contained asbestos. In addition to requiring a showing of specific facts, Rule 1035(d) requires that the evidence offered to support or defeat the motion be in the nature of admissible evidence. Specifically, Rule 1035(d) provides in part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein." Thus, a motion for summary judgment cannot be supported or defeated by statements that include inadmissible hearsay evidence. *See Isaacson v. Mobile Propane Corporation,* 315 Pa.Super. 42, 461 A.2d 625 (1983).

All three sets of appellants attempt to defeat the motions for summary judgment with affidavits or depositions of tradesmen or co-workers regarding the presence of asbestos containing products in the appellants' or their decedents' workplaces. The first set of answers we analyze contain statements that the person listed knew that the products at issue contained asbestos because they had been told so by others. Such statements are clearly inadmissible hearsay as they are out-of-court declarations offered to show the truth of the matter contained in the declaration. *Reimer v. Tien,* 356 Pa.Super. 192, 202, 514 A.2d 566, 571 (1986). Thus, the alleged statements of other tradesmen that certain products contained asbestos cannot be considered in ruling on the motion for summary judgment. Therefore, in order to defeat appellees' motion for summary judgment appellants must provide other sources of evidence to establish that the products in issue contained asbestos.

■ The next set of answers we analyze contain statements that the person listed knew that the products at issue contained asbestos because they could withstand high temperatures. "On a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, who must be given the benefit of all *reasonable inferences*." *Mscisz v. Russell*, 338 Pa.Super. 38, 41, 487 A.2d 839, 841 (1984), (*appeal denied*) (emphasis added); *see also Helinek v. Helinek*, 337 Pa.Super. 497, 487 A.2d 369 (1985), (*appeal denied*) (nonmoving party gets benefit of all reasonable inferences that may be drawn from the facts). No party disputes the fact that portions of the B & W facility were subject to high temperatures and that heat resistant materials were used to construct or insulate these sections of the facilities. The tradesmen supplying affidavits or depositions to appellants inferred from this fact that the material must be asbestos.[3] Certainly, one inference that may be drawn from these facts is that the heat resistant products contained the heat resistant substance asbestos. However, without more facts, it is not reasonable for the trial court to infer that these products *must* have contained asbestos because they were heat resistant. The same facts could lead to the inference that the heat resistant products contained other heat resistant materials; therefore there was insufficient foundation for a jury to infer by a preponderance of the evidence that the heat resistant products used at B & W contained asbestos.

Next, we review whether the totality of the evidence offered in appellants' response to the motion for summary judgment meets the strict requirements as set forth in *Eckenrod v. GAF Corporation*, 375 Pa.Super. 187, 191–92,

3. In a number of affidavits, the only statements made to establish the affiant's knowledge that a product contained asbestos was that it could resist high temperatures and/or other tradesmen told them that the products contained asbestos. There is no other discussion about the tradesmen's experience with asbestos and their ability to recognize asbestos containing products by their appearance based on past use. *Cf. Aetna Casualty & Surety Company v. Jennusa*, 469 S.W.2d 423 (Tex.Civ.App.1971). We do not reach the issue today of whether a layman who works extensively with asbestos products is qualified to testify as to the presence of asbestos in a product.

544 A.2d 50, 52–53, *allocatur denied,* 520 Pa. 605, 553 A.2d 968 (1988), *sub nom. Petition of Pittsburgh Gage Co.,* 520 Pa. 607, 553 A.2d 969 (1988). The *Eckenrod* panel addressed the burden that a non-movant must meet to survive a summary judgment motion in the context of a case where the alleged harm is from exposure to asbestos:

> In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. *Wible v. Keene Corporation,* No. 86–4451 Slip. op. (E.D.Pa. August 19, 1987) [available on WESTLAW, 1987 WL 15833]; *Anastasi v. Pacor, Inc.,* NO. 6251 (C.P. Phila. Co., March 8, 1983), *aff'd,* 349 Pa.Super. 610, 503 A.2d 44 (1985). Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. *Pongrac v. Consolidated Rail Corp.,* 632 F.Supp. 126 (E.D.Pa.1985). Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury. *See Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983).

> . . . . .

> Whether direct or circumstantial evidence is relied upon, our inquiry, under a motion for summary judgment, must be whether plaintiff has pointed to sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of decedent's disease by the product of each particular defendant. *Schmidt v. Johns–Manville Corp.,* No. 80–3339 Slip. op. (D.Md. November 30, 1982). Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment by showing circumstantial evidence de-

pends upon the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto. *Id.*

The Eckenrod court upheld a grant of summary judgment where there was no evidence to show the regularity or nature of the decedent's contact with asbestos and no evidence to show that Mr. Eckenrod worked with asbestos products supplied or manufactured by any of the named defendants. *Id.* 375 Pa.Super. at 192, 544 A.2d at 53. None of the affidavits in that case were sufficient to establish more than Mr. Eckenrod's occasional presence at one particular location and though indicating exposure to asbestos, none clarified the brand of the product used or the nature and length of the exposure, including Mr. Eckenrod's proximity thereto. *Id.*, 375 Pa.Superior Ct. at 191, 544 A.2d at 52. Therefore, the plaintiff in that case could not establish how frequently any particular product was used, where it was used, and whether it was used often in a location where Mr. Eckenrod worked on a regular basis.

Further, though there was some evidence that appellees' products were used by B & W, the court stated that "[t]he mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." *Id.*, 375 Pa.Superior Ct. at 192, 544 A.2d at 53 (citations omitted). The court indicated, however, that testimony that appellees' products were present in the furnace area in which Mr. Eckenrod worked would provide a reasonable inference that he was exposed to the particular appellee's asbestos product. *Id.* Questions of the frequency and nature of that exposure would still remain of course.

We now apply the above stated guidelines to the facts of the three cases before us.[4]

---

**4.** Appellants also argue that they were prejudiced by the trial court's decision not to hear oral arguments before deciding on the motions for summary judgment. There is nothing in the record to indicate that any of appellants raised an argument with their respective trial judges regarding those judges' decisions not to hear oral argument. Thus, appellants have waived this issue. *Vaskie v. West American*

Samarin

Jack Samarin worked in the Cold Draw Department of B & W's Main Plant from 1964 to 1982. Samarin worked as a sandblaster, crane follower and laborer. Mr. Samarin died in 1984. The present action was brought by his wife Dorothy Samarin against sixteen defendants claiming that they manufactured and/or supplied asbestos products which caused the death of her husband. Twelve of the defendants were granted summary judgment. Mrs. Samarin appeals as to six of those defendants: GAF Corporation, Celotex Corporation (as successor in interest to Philip Carey), Owens–Corning Fiberglas Corporation, A–Best Products Company, Raymark Industries and Eagle–Picher Industries. These companies filed motions for summary judgment claiming that none of their products could be identified as causing harm to Jack Samarin. Appellant responded with affidavits, depositions, and answers to interrogatories to establish the connection between appellees' products and her husband.

 The affidavit of John Shotton indicated that he worked with Samarin at Cold Draw for all of Samarins' eighteen years. Shotton stated that Samarin was exposed to and breathed asbestos dust from insulated pipecovering on steam lines, cloth hung on furnace doors and bricks used in the five Cold Draw furnaces. Shotton identified Owens–Corning Kaylo as the product used as the pipe insulation but did not know who produced the cloth or bricks. In all three cases he said he knew the products contained asbestos because they could withstand high temperatures and tradesmen referred to the products as asbestos products. As stated *supra*, these two statements cannot be used to support appellant's assertion that the products were asbestos. Thus, appellant Samarin must provide some other evidence to establish that the Owens–Corning pipecover and

*Insurance Company,* 383 Pa.Super. 76, n. 1, 556 A.2d 436, 38 n. 1, 556 A.2d 436, 38 n. 1 (1989). Moreover, all appellants have further waived this claim by failing to include it in their Statement of Questions Involved portion of their brief. *Id.;* Pa.R.A.P. 2116(a).

any of the other products seen by Shotton contained asbestos.

Appellant contends that in her response to interrogatories asking for the names of any person who had information of Jack Samarin's exposure to asbestos products, she included the names of ten people who could identify Owens–Corning Kaylo asbestos containing pipecovering. As discussed *supra*, however, this list did not provide any information on the relationship of these people to Jack Samarin and whether or not they could place any particular asbestos product in the vicinity of Jack Samarin and show the frequency of his exposure to any particular product. Thus, even if they could testify that the Kaylo product contained asbestos, the answers to the interrogatories contain no information which ties these people to the Cold Draw facility in order to show that the Kaylo product used near and breathed by Jack Samarin contained asbestos. Therefore, it is not possible to establish that Jack Samarin was exposed to Owens–Corning products containing asbestos from the record that appellant has created for this court.[5]

■ As with Owens–Corning, the Eagle–Picher and Raymark products at issue were identified as containing asbestos based upon the observation that they could withstand high temperatures. This is the only evidence, along with the blanket answers to interrogatories, that appellants offer to establish that these products were asbestos. Thus, we must also affirm the summary judgment motion as to these two appellees.

Appellant's effort against A–Best is supported by the deposition testimony of James Capots and the affidavit of

5. Appellant argues that the existence of asbestos in Owens–Corning Kaylo pipecovering has been established beyond peradventure because Owens–Corning has answered interrogatories in other cases acknowledging that the Kaylo line of products sold between 1953 and 1972 contained asbestos. Appellant's Brief at 22. Unfortunately, and it is unfortunate if appellant's assertion is true, plaintiff has not produced any evidence in the record to support this assertion. This court cannot consider anything that is not part of the record. *Spain v. Vicente*, 315 Pa.Super. 135, 144 n. 3, 461 A.2d 833, 838 n. 3 (1983) (citation omitted).

John Shotton. Capots testified that he was in charge of purchasing certain asbestos containing products from 1966 until the present, i.e. July of 1988 when the deposition was given. He worked in B & W's purchasing department. He purchased asbestos products from 1966 to 1970 or 1971. He indicated that among others, he purchased asbestos products from A–Best. This included the purchase of asbestos cloth. Capots' testimony indicates that he also purchased cloth from the Gage Company and from Gateway Industrial Supply. Shotton's affidavit indicates that Jack Samarin was exposed to a heat resistant cloth product but never names the brand. From these facts we can conclude that Jack Samarin was exposed to cloth and that the cloth he was exposed to may have been supplied by A–Best or some other company. We have no way of telling who supplied the cloth that Jack Samarin was actually exposed too. Thus, appellant cannot establish that Jack Samarin was exposed to any A–Best cloth in the Cold Draw facility based on the evidence in Capots deposition and Shotton's affidavit.

Appellant also claims that A–Best supplied asbestos gloves at B & W that were worn by Jack Samarin. A–Best admits in its motion for summary judgment that A–Best sold gloves made of asbestos cloth to B & W. A–Best claims the manufacturer of the gloves was Raymark. Capots deposition indicates that he also purchased gloves for B & W from the now defunct Penn Valley Safeguards. Appellant offers no evidence to establish what brand of gloves appellant actually wore.

In any event, appellant offers no evidence to establish that Samarin wore any sort of gloves much less that he wore the specific brand supplied by A–Best. Appellant claims there is a genuine issue of fact as to whether Jack Samarin wore gloves based upon the following answers given in her deposition:

[Attorney]: [D]id he ever talk about any special clothing he might have worn for any particular job?

[Mrs. Samarin]: No.

[Attorney]: Or any kind of special protection he might have had to have besides hat and shoes?

[Mrs. Samarin]: No.

[Attorney]: When he was a laborer he never talked about putting on anything special for working in a particular place?

[Mrs. Samarin]: They always wear helmets and that, you know.

We find it impossible to create from these answers any genuine factual dispute that Jack Samarin wore gloves. Even if we would do so, there is still nothing of record to connect him to gloves supplied by A–Best. The mere fact that their gloves were supplied to B & W and present in its enormous facilities cannot be used to establish the fact that Jack Samarin used those gloves or breathed any dust that may have come off of them. *Eckenrod v. GAF Corp.*, *supra*. We thus affirm the grant of summary judgment in favor of A–Best.

Appellant's claims against GAF and Celotex are based chiefly on the affidavits of William Betke and John Shotten. Betke was a pipefitter for B & W from 1952 to 1983. From 1963 to 1983, he worked intermittently, "off and on" as he put it, throughout the Wallace Run Plant of B & W, including but not limited to its Blooming Mill, Soaking Pits, Scarfing Area and Bar Mill subdivisions. During that same period he worked intermittently at the Main Tube Plant of B & W including but not limited to its Hot Mill, Hot Finish, South Mill and Cold Draw subdivisions. During the same period he also worked at the Koppel section of B & W doing work that included Special Metals, Weldings and Fittings, Bar Mill, Blooming Mill, Soaking Pits, Melt Shop and Extruded Shapes. He also worked intermittently at the East Works section of B & W including but not limited to its pipe shop, tube reducing, pickle house and extrusion mill.

Betke stated that there were waterlines and steamlines in every one of these areas that were at floor level, parallel to the walls and overhead. His chief job was to install new pipe wherever needed. He observed that this installation

caused the pipecovering to come loose and cast dust into the air that he and others in the area were forced to breath. On occasion where he was required to cut and install pipe covering the same result ensued. Likewise, he observed that the daily operation of overhead cranes caused the release of dust from the pipecovering that workers in the area were forced to breath. He stated that two of the manufacturers of the pipecovering were GAF/Ruberoid and Philip Carey (Celotex) and that he knew the material used contained asbestos because it could resist high temperatures and because the boxes containing those two product had the word "asbestos" printed on them.

John Shotton's affidavit stated that he and Jack Samarin were forced to breathe dust from pipecovering due to circumstances similar to those described in the Betke affidavit. However, Shotton states that the pipecovering he and Jack Samarin were forced to breathe dust from was Owens–Corning Kaylo.

We first observe that Shotton's affidavit indicates that the only pipecovering used in Cold Draw where he and Jack Samarin worked was Owens–Corning Kaylo. Betke's affidavit simply says that in the numerous areas he worked in, two of the products used were from GAF and Celotex. Thus, we conclude that there is no issue as to Jack Samarin's exposure to any GAF or Celotex pipecovering.

Even if we concluded that it was possible to find that Betke's affidavit could be read to say that GAF and Celotex pipecovering were used in Cold Draw, we would still affirm the summary judgment in these parties' favor. First, Betke does not place these particular products in any portion of Cold Draw so that we can conclude that Jack Samarin was near any of the pipes covered with the GAF or Celotex insulation. Second, Betke does not establish with what frequency these two products were placed in Cold Draw. He only states that they were used throughout all of B & W's facilities. As stated above, the mere presence of a product in the facility does not establish that any particular person breathed it. *Eckenrod v. GAF, supra.* For all of

these reasons we affirm the grants of summary judgment to GAF and Celotex.

## Byers

Earl Byers was employed at B & W's Wallace Run Mill from 1946 to 1984. Byers was a member of the Fuel Oil Department and worked around the soaking pits and furnaces in that department as a soaking pit attendant, temperature observer and furnace tender. During that time Byers also worked in the hot finish of the Main Plant and the extrusion mill of the East Works Mill of B & W in Beaver Falls. The record indicates that Byers worked in the Steel Mill at some point after October of 1982. Earl Byers and his wife, Mary Byers, filed suit against a number of parties claiming that they supplied asbestos products to B & W that contributed to Earl Byers developing lung cancer. Mr. Byers died in 1985 and Mrs. Byers in 1987. The current appellants are the Byers children who are representing the estates of their parents in this action. Appellants are appealing the grant of summary judgment to appellees GAF Corporation, Armstrong World Industries, Celotex Corporation, Owens Corning Fiberglas Corporation, H.K. Porter Company, Eagle–Picher Industries and Gateway Industrial Supply.

Appellants present the affidavit of Theron Gorrell to establish the whereabouts of Earl Byers in relation to the asbestos products at issue. Gorrell worked as a quality controller in the oil department throughout all of the mills at B & W. He knew that Byers worked in the soaking pits and furnaces at the Wallace Run Mill. He stated that Byers would have been exposed to asbestos dust created by the various tasks that involved maintenance and repair of the steampipes and the furnaces at Wallace Run that was generated from the various asbestos products used to insulate and construct the pipes and furnaces.

By affidavit, Willard Marx stated that he worked as a pipefitter from 1960 to 1970 at the Wallace Run Plant. He stated that asbestos containing pipe insulation, block, gask-

et material, rope packing, string packing, sheet packing, square packing, and asbestos blankets were used by him and other pipecoverers when making repairs to the steam line systems which went throughout the plant, including its soaking pits. Affiant stated that through the cutting and application of these products as well as through aging, dust would be released into the air. Marx states that workers one to ten feet alongside the steamlines and fifteen to thirty feet below would be forced to breathe this dust. Marx further stated that the lines were repaired every one or two months and major repairs were done annually as needed.

Marx stated that some of the string packing used was manufactured by Celotex. He knew this because the boxes were so labelled. He further stated that some of the pipe insulation and block used was manufactured by Armstrong. He knew this because the name "Armstrong" was likewise on the boxes of material. Finally, he also stated that some of the pipe insulation and block used was Owens–Corning Kaylo because the boxes that contained the material had the word "Kaylo" on them. Marx knew these products contained asbestos because they were applied to extremely hot steam lines and because he was specifically required to apply asbestos products that could stand up under extreme heat.

Again, the problem with the evidence offered by appellant is that it lacks sufficient specificity to show that Earl Byers was regularly exposed to these products. We do not know what furnaces and pits Earl Byers worked in and whether there was Kaylo insulation in that pit, Armstrong insulation, Raymark insulation or any particular insulation. Appellants leave us with enough facts only for a guessing game. They seem to ask us to find that it is probable that Earl Byers worked near each of these products and breathed asbestos dust released from each of these products on a regular basis at some point in the ten year period identified by Marx. However, *Eckenrod* makes clear that

we cannot enter such a guessing game. We therefore affirm the grant of summary judgment on these claims.[6]

In the cases of Eagle–Picher and H.K. Porter there is no evidence that the products at issue contained asbestos other than statements that the products could resist high temperatures and that there were lists of people in answers to interrogatories who could identify those products. We affirm the grant of summary judgment as to these two defendants for the same reasons we stated *supra* when faced with the same circumstances. We likewise affirm the grant of summary judgment as to GAF and Celotex for reasons stated in our determination of Jack Samarin's claims. The Byers rely on the same affidavit of William Betke as did appellant Samarin to establish exposure to GAF and Philip Carey (Celotex) pipecovering. Betke indicated that GAF and Celotex were only two of the manufacturers of pipecovering and there is no evidence to place Celotex or GAF pipecovering in regular proximity to Earl Byers.

Finally, there is no merit to appellants efforts to oppose Gateway. William Young, a worker in various capacities in B & W's storeroom, testified that B & W purchased asbes-

6. We note here that we do not follow the trial courts' apparent rulings that the testimony of tradesmen who worked with asbestos can never be used in a case unless those tradesmen actually knew they were working near a particular plaintiff. This rule would place an unreasonable burden on those who work in gargantuan facilities and are exposed to asbestos but were not themselves asbestos workers. These people would have no means of knowing what asbestos products they were exposed to and the asbestos workers would have no reason to associate with laborers at other tasks.

Thus, *e.g.*, we would find the evidence sufficient if a laborer who has been exposed to asbestos could establish the exact location in which he worked, the time period he worked there, the time of day he worked there, the location of an asbestos worker and the product he installed, removed or repaired, the proximity of that location to the location where the plaintiff worked and the time period and time of day each worked at his respective location. If a worker established that he worked in the south corner of furnace A and that a pipecoverer worked fifteen feet above the ground at the south corner of furnace A at the same time every day for ten years, there would be no reason to require that the pipecoverer know that the worker was directly below him all that time.

tos cloth from Gateway. The deposition of James Capots indicated the same. However, neither of the affidavits offered by appellants to support their argument against Gateway indicate that Earl Byers was exposed to asbestos dust originating in asbestos cloth. Appellants claim that Gateway supplied Raybestos Manhattan cloth and that the affidavit of Willard Marx can be used to establish that Byers was exposed to Raybestos Manhattan cloth. However, the Marx affidavit only speaks of Raybestos Manhattan packing string and blankets and does not speak of asbestos cloth. Moreover, the same problem of proving that Earl Byers worked in regular proximity to this product remains. Thus, we affirm the grant of summary judgment in favor of Gateway.

### Cartwright

Robert Cartwright worked at B & W from 1960 to 1984. From 1960 to 1983 he worked at Hot Mill in the Main Plant at Beaver Falls. He worked as a crane operator, as a millwright for one to two years in the mid 1960's and a a checker in the early 1960's. In his deposition, Cartwright indicated that he worked as a crane operator from 1960–1978 and also in the labor pool during that time. The labor pool work was once a day every couple of months. He also stated that he worked at the Cold Finish at the Ambridge facility in the same capacities. Mr. Cartwright was diagnosed as having asbestosis and he and his wife brought claims against a number of defendants asserting that he suffered harm due to exposure to asbestos from products they manufactured or supplied. In the instant action, appellants appeal the grant of summary judgments to Owens–Corning Fiberglas Corporation, H.K. Porter Company, GAF Corporation, Celotex Corporation, Armstrong World Industries, Eagle–Picher Industries, Gateway Industrial Supplies, and A–Best Products.

We affirm the grant of summary judgment as to Eagle–Picher, Armstrong, Owens–Corning, and H.K. Porter as the only evidence offered by appellants to establish that the products at issue contained asbestos are affidavits stating

that the products were resistant to high temperatures and/or other tradesmen stated they were asbestos, and the presence of lists of names in answer to interrogatories. *See* discussion *supra.*

■ We affirm the grant of summary judgment as to A–Best, Gateway, GAF and Celotex because these appellants, like the previous appellants, have failed to adduce evidence that would establish regular exposure of Cartwright to the products in question. As with the other appellants, the Cartwrights rely upon the depositions of Capots and Young and the affidavit of Betke to establish the necessary connection between A–Best, Gateway, GAF and Celotex with the injured appellant. Their statements establish a general or possible presence of these products but do not provide a sufficient nexus of frequent exposure in regular proximity to the plaintiff. Likewise the additional deposition of Terry Bingle does nothing more to establish a specific nexus between Cartwright's harm and A–Best and Gateway products than do those of Young or Capots.

We address one last matter in this case. Appellee Owens–Corning has filed a motion for attorney's fees against appellants based on the allegedly frivolous nature of appellants' effort to supplement the record. We cannot address Owens–Corning's claim at this point as it has been prematurely raised. *See* Pa.R.A.P. 2744, 2751. We observe, however, that on the record and arguments now present before us, we would be disinclined to grant an award for attorney's fees or costs against appellants.

In sum, we affirm all three orders granting judgment in favor of appellees.

ROWLEY, J., files a concurring statement.

ROWLEY, Judge, concurring:

I join in all but two provisions of the majority's thorough and well-reasoned Opinion. The first statement in which I do not join appears in footnote 6 (majority op. at 360), where the majority, after noting that "we do not follow the trial

courts' apparent rulings" concerning the admissibility of the testimony of tradesmen, proceeds to enumerate the circumstances under which "we would find the evidence sufficient...." The second statement is the observation that while Owens–Corning's claim for attorney's fees has been prematurely raised, "we would be disinclined to grant an award for attorney's fees or costs against appellants" (majority op. at 362). As we are not required to resolve either of these issues at this point, I would postpone their resolution until such time as they are properly before this Court.