## Rabold v. Ericsson Inc.

*Laurence H. Brown,* for plaintiff.
*Richard W. Foltz,* for defendant.

BERNSTEIN, *J.,* November 24, 2004—Plaintiff filed this action against defendant Ericsson claiming plaintiff's decedent Rabold had died as a result of exposure to asbestos contained in wire and cable manufactured and distributed by defendant Ericsson's predecessor companies.

In accord with long-standing Philadelphia County procedure in asbestos litigation, the case was tried by jury in coordination with three other unrelated, unconsolidated asbestos lawsuits. Likewise, in accord with long-stand-

ing Philadelphia County procedure in asbestos litigation, these cases were tried in a reverse bifurcated manner. Accordingly, the jury decided damages prior to determining which, if any, defendant was liable to any plaintiff.

Prior to trial, defendant Ericsson filed a motion in limine in opposition to the coordinated trial of four unrelated cases which had not been consolidated and a second motion in opposition to reverse bifurcation. These motions were denied on October 8, 2003, by the Honorable Norman Ackerman. Thus, the trials in *Paula Box and Jerry Box, Co-Executrix of the Estate of Larry Box and Paul Box in Her Own Right v. ACandS Inc.,* July term 2002, no. 3632; *Guila Andrews, Executrix of the Estate of Luke Andrews, and in Her Own Right v. ACandS Inc.,* July term 2001, no. 482; *June and Eugene Gerhart v. ACandS Inc.,* September term 2001, no. 1646; and *David Rabold and Bobbi Joe Klick, Co-Executors of the Estate of Clarence Rabold v. Ericsson Inc.,* December term 2001, no. 3141, commenced on October 9, 2003. During trial, three of the four plaintiffs' cases were settled. On October 20, 2003, the jury entered a damage award in favor of plaintiff Rabold's decedent in the amount of $3.5 million.

The liability phase of trial commenced immediately after the damages verdict. On October 23, 2003, at the conclusion of plaintiff's testimony, defendant Ericsson moved the court for a nonsuit. Defendant claims that plaintiff Rabold in his case failed to identify any asbestos-containing products manufactured or distributed by any Ericsson or Ericsson predecessor company which he had inhaled. The motion for nonsuit was denied. On

October 27, 2003, at the conclusion of all evidence, defendant Ericsson moved for a directed verdict on the same basis which was also denied. On October 23, 2003, the jury entered a liability verdict against defendant Ericsson.

Ericsson files post-verdict seeking judgment n.o.v. or a new trial. Defendant Ericsson asserts that it has been denied due process of law because of the coordination of this case at trial with three other unrelated asbestos cases and because of the reverse bifurcation procedure employed in Philadelphia County. Raising a closely related issue, defendant Ericsson claims that judgment n.o.v. should be granted because if reference to testimony presented to the same jury in the other non-consolidated but jointly tried cases is redacted, plaintiff Rabold himself failed to demonstrate that any asbestos products to which plaintiff's decedent was exposed had been manufactured or distributed by any Ericsson predecessor company to Ericsson.

At trial plaintiff presented three different depositions of Mr. Rabold, who died during trial.[1] Mr. Rabold himself did not identify any asbestos-containing wiring or cable as having been manufactured by either Anaconda or Continental, Ericsson's predecessors. Specifically, Mr. Rabold testified that he never saw the word "asbestos" or "asbestos-containing" on any Anaconda or Continental wire. He could not testify whether there was any asbestos in the wire produced by Anaconda or Continental on the single wire machine he worked on.

---

1. Plaintiff Rabold died during trial; a temporary estate was raised, so, after a hiatus, the trial resumed. The jury was not told the plaintiff Rabold had died but damages were restricted by agreement of the parties.

Obviously, product identity is a crucial element in proof that the defendant's asbestos-containing produce caused injury. See *Wilson v. A.P. Green Industries Inc.,* 807 A.2d 922 (Pa. Super. 2002), and *Samarin v. GAF Corp.,* 391 Pa. Super. 340, 571 A.2d 398 (1989). Thus, plaintiff's decedent, Rabold himself, did not meet this requirement and had this been the totality of evidence presented to the jury, a nonsuit would have been granted.

Plaintiff testified that he had been extensively exposed to substances from the wires he worked with on a flow coater machine. He was not able to testify, however, that the cable used in the flow coater machine was Anaconda nor Continental wire which contained asbestos. As held in the case of *Samarin v. GAF Corp.,* testimony that a product contained asbestos based strictly on the fact that it was itself heat resistant is by itself insufficient to establish that a product contained asbestos. Thus, Mr. Rabold's testimony, if taken in isolation, fails to establish the defendant's predecessor produced any asbestos which plaintiff's decedent inhaled and defendant's motion for directed verdict would have been granted.

However, plaintiff's decedent's Rabold's deposition testimony was not the only testimony the jury heard on the question of whether the Anaconda or Continental wire contained asbestos. Co-workers of Mr. Rabold, whose trial proceeded with Mr. Rabold's, worked on the same wire machine as Mr. Rabold. This testimony filled the gap whether Anaconda or Continental wire did contain asbestos fiber. Accordingly, if all the testimony presented to the jury at the combined trials may be considered as part of Mr. Rabold's case, the evidence was sufficient to raise a jury question as to defendant's liability and the

motions for nonsuit and directed verdict were properly decided.

The question therefore becomes whether the jury, simultaneously hearing coordinated but not consolidated cases, is restricted in its consideration of each case from considering overlapping relevant testimony technically presented by another plaintiff.

Defendant points to the standard jury instruction which was given requiring that each of the coordinated cases must be considered on its own merits. In an effort to ensure that the jury was able to understand the testimony in four different coordinated cases with different multiple defendants in each, the court instructed the jury in opening instructions: "You have got four plaintiffs, and a slew of defendants . . . each plaintiff, and each defendant deserves individual attention, and must be kept sorted out, as if that was the only case in front of you." The defense further claims that because the court ordered counsel to identify witnesses by case, the jury was implicitly directed to consider evidence only in that case, even if relevant to a different plaintiff's claim. The defense also claims that closing instructions in which the court said: "Each case has to be given its own attention and decided on its own evidence" and "there are three different cases that have to be separate and decided separately" also directed the jury to mentally compartmentalize the evidence.

The defense is incorrect in the import of these cautionary instructions. The court did not direct the jury that evidence relevant to a just verdict in one of these cases could not be considered if presented by a co-plaintiff. Indeed, it would be most unreasonable to expect a jury

to be able to so compartmentalize their mind not just to keep straight the claims and defendants in multiple cases tried together, but also to restrict their consideration of evidence which overlap to the specific cases in which the evidence was presented.[2]

Although the Supreme Court experiment in note-taking undoubtedly makes comprehension easier, it is simply unreasonable to expect jurors to possibly limit their consideration of relevant evidence to specific cases and exclude it from other cases even when relevant. It is doubtful whether jurors can possibly accomplish this feat of mental gymnastics, even if specifically instructed to. It is difficult to imagine the instruction which would have to be constantly repeated which could reasonably explain this requirement to jurors. The general instructions to consider multiple cases involving four different plaintiffs and numerous defendants separately was not so intended, and did not so explain. Neither did it communicate the concept that evidence presented, which was relevant to the Rabold case, could nonetheless not be considered in the Rabold case because the witnesses' testimony had not been specifically identified in pretrial statements or at trial as presented in the Rabold case. The management difficulties in coordinating trials would become insurmountable. Accordingly, any testimony factually relevant to the Rabold case that was presented to the jury in any of the coordinated cases was properly considered by them and the judgment n.o.v. was properly denied and post verdict motions claiming otherwise are likewise properly denied.

---

2. And where evidence is, in fact, presented in multiple cases, to remember which cases are included and which excluded.

Defendants further claim that reverse bifurcation is impermissible because "the original reason reverse bifurcation was utilized in the Philadelphia Court system" namely "to eliminate a grossly flooded and overburdened docket of asbestos cases" is no longer valid. This argument is accurate but inapposite. The instant case was tried in 2003, approximately two years after filing. For over a decade the Philadelphia courts have demonstrated an ability to process thousands of cases within the American Bar Association's standards for time of trial within two years. At the time coordination of trials and reverse bifurcation were initiated, it was needed to handle an overburdened docket. The transformation of the Philadelphia courts, and the elimination of all backlog of civil cases, may make coordination of cases and reverse bifurcation unnecessary, but this fact cannot make Judge Ackerman's ruling, which is in accord with 20 years of Philadelphia County practice, an "abuse of discretion." The issues presented herein were fully briefed before the Honorable Norman Ackerman, supervising judge of the Complex Litigation Center, who, in accordance with long-standing Philadelphia County policy in handling asbestos cases, denied the motion to try these cases separately or in anything but a reversed bifurcation manner. The standard of review on post verdict motions must be abuse of discretion. It cannot be an abuse of discretion for the supervising judge to affirm a trial method which has been successfully used for over a decade. Accordingly, the post verdict motion on this ground is denied.

Defendant also complains on restrictions in voir dire and seeks remittitur. The purpose of voir dire is to impanel a competent, fair, impartial and unprejudiced jury.

Therefore, the scope of voir dire is properly limited to questions that seek to uncover a potential juror's lack of qualification or fixed opinion regarding the issues to be decided. A prospective juror's attitudes are relevant only to the extent that his opinions are so deeply held as to render him incapable of setting them aside and applying the law as instructed by the court. *Commonwealth v. England,* 474 Pa. 1, 8, 375 A.2d 1292, 1296 (1977).

The questions the court ruled inappropriate were not designed to determine whether the jury had fixed opinions that would have rendered them unable to be fair. The questions sought to probe general attitudes to determine which prospective jurors might be most responsive to specific testimony and argument. The court did not abuse its discretion in precluding the particular questions. After the objection was raised, and before swearing in the jury, the court questioned the panel to ensure that the jurors all were fair and impartial, would put aside preconceived ideas and would decide the case on the evidence and law as given to them by the court. The court's questions established that all of the jurors could be fair to a corporation and could be fair in an asbestos case.

Ericsson's final argument is that the damage award to the estate of Clarence Rabold is excessive and that therefore, it is entitled to remittitur. This court may grant relief only if the verdict is so shocking to the conscience of the court that the court must conclude that the jury verdict was the result of partiality, prejudice, mistake, or corruption. *Gunn v. Grossman,* 748 A.2d 1235, 1240-41 (Pa. Super. 2000). Given the nature and extent of Mr. Rabold's fatal injuries, there is no basis to overturn the amount.

Mr. Rabold initially began to suffer with symptoms later diagnosed as mesothelioma in August 2000, more than three years before he died. At that time, fluid accumulated in Mr. Rabold's chest, causing shortness of breath. A procedure to drain fluid gave Mr. Rabold some temporary improvement. Within a few months however, the fluid and symptoms had returned with such severity that Mr. Rabold had to undergo an invasive diagnostic procedure. The procedure included the insertion of tubes to drain the fluid from his lungs. He also underwent a surgical procedure to limit the reaccumulation of fluid. By February 2001, doctors had made the diagnosis of mesothelioma, an incurable, fatal form of cancer.

Mr. Rabold started on courses of chemotherapy to stifle the spread of disease and control its symptoms. Doctors left Mr. Rabold with no hope that the therapy would produce a cure. The chemotherapy left Mr. Rabold fatigued and with foot and leg pain so severe he could not stand. By 2003, the chemotherapy failed to stop the advance of the disease or symptoms. Mr. Rabold experienced increasing shortness of breath, weakness, and pain. By the summer of 2003, the disease caused such extensive fluid in the chest that Mr. Rabold's shortness of breath was extreme and he had to be on supplemental oxygen at all times. Beginning in June 2003, Mr. Rabold had constant abdominal pain that he described as being like a miserable toothache and it became infeasible for him to utilize his bedroom on the second floor of his house because the exertion of walking the one flight of stairs was too great. The disease inexorably led to Mr. Rabold's death during trial.

The decision of the court below should be affirmed.