456 A.2d 1009

**Milton WEISS, Jr., Appellant,**

v.

**KEYSTONE MACK SALES, INC.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1982.

Filed Feb. 11, 1983.

426

John Kerry Weston, Norristown, for appellant.

Timothy O. Nolen, Norristown, for appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from an order entering summary judgment. The action is for damages arising from the purchase and repair of a truck. The lower court held that damages were precluded because the purchase order stated that the truck was being sold "as is—where is." However, the lower court did not consider conduct by the seller subsequent to the purchase order, thereby leaving unresolved the issues of whether all warranties had been effectively disclaimed, and whether any obligation subsequent to the purchase order had arisen. We therefore reverse.

The pleadings and answers to interrogatories may be summarized as follows.

On November 10, 1978, appellant purchased a 1974 used Mack truck from appellee. The purchase order, which is attached as Exhibit A of the complaint, purported (1) to disclaim all warranties, express or implied; (2) to exclude consequential damages as a remedy; and (3) to contain the entire agreement of the parties. The face of the purchase order contained the following: "THIS TRUCK SOLD 'AS IS.' 'WHERE IS.' NO WARRANTY OR GUARANTEE IS OFFERED OR IMPLIED." Immediately beneath this statement appears the following: "Company specifically disclaims any implied warranty of merchantability or fitness for a particular purpose." Appellant claims, however, that appellee's salesman made "certain oral and written affirmations of fact, promises and descriptions," which "became the basis of the bargain." Complaint ¶ 3. Specifically, appellant claims that the salesman said that the truck was the "best-running truck that Keystone Mack had purchased from [its supplier], and stated unqualifiedly that the truck was in excellent condition." Plaintiff's Answers to Interrogatories ¶ 1(e). Appellant also claims that appellee knew that he needed the truck in his business, and that he relied on appellee's skill and judgment in selecting a suitable truck for his business. Complaint ¶ 4. Appellee denies that any affirmations were made and asserts that the truck was sold "as is—where is." Answer ¶ 3.

The parties also disagree over when appellant accepted the truck. Appellee claims that appellant accepted the truck on November 10, 1978. Answer ¶ 5. Appellant claims that when he went to get the truck on November 10, its engine emitted blue smoke, and that he refused to accept it until November 22, when appellee's salesman told him that the engine had been repaired, and signed and gave him a handwritten note that stated: "30 day warranty 50/50 on the 250 Cummins engine. If a problem develops have the truck brought back to us. We certify that the engine is in excellent running condition." Complaint ¶ 6; Plaintiff's An-

swer to Interrogatories ¶ 2; the handwritten note is attached as Exhibit B of the complaint. Appellant characterizes the handwritten note as "a written confirmation of the warranty on the truck's engine." Complaint ¶ 6. Appellee does not deny that the note was signed and given to appellant, but characterizes it as "an opinion that this engine was in excellent running condition," and denies that this "expression of opinion is a warranty." Answer ¶ 6.

Appellant states that after he left appellee's place of business with the truck on November 22, the truck was still emitting blue smoke, and, when he had a mechanic inspect it, a cracked engine block was found. Appellant also states that when he told appellee's salesman about the cracked block, the salesman instructed him to return the truck, and when he did return the truck on November 24, the salesman told him "that Keystone Mack would 'make good for' the engine; that Keystone Mack would obtain another block and rebuild it to replace the one in the truck; and that there would be no cost to [appellant] even if [appellee] had to sue the company they bought the truck from." Plaintiff's Answers to Interrogatories ¶ 2. Finally, appellant states that he made repeated inquiries about the status of the truck's repairs but the truck was not ready until January 31, 1979. Complaint ¶ 8; Plaintiff's Answers to Interrogatories ¶ 2. On the basis of these allegations, appellant claims $6,137.80 in damages as the "direct and proximate result of appellee's breach of warranty," Complaint ¶ 9, this amount being income lost while the truck was being repaired. He substantiates the amount of the claim by attaching to his answers to interrogatories various business receipts purporting to show his income for a comparable period in the previous year. Plaintiff's Answers to Interrogatories ¶ 12 & Exhibits. Appellee admits that the truck had a cracked engine block, and that pursuant to its salesman's instructions, appellant returned the truck for repairs. Appellee states, however, that the repairs to the truck were made "as expeditiously as possible, considering the complex

nature of the job," which involved removing and replacing the engine with the cracked block. Answer ¶ 8.

As part of its answer, appellee pleaded new matter and a counterclaim. The new matter alleges that appellee made no warranties incident to the sale of the truck, and that "the only warranty offered was the 'thirty day $^{50}/_{50}$ warranty on the 250 Cummings Engine.'" Answer ¶ 13. The new matter further alleges that appellee was not liable for any consequential damages arising from appellant's loss of business while the truck was being repaired, and that "[appellant's] damages, if any, are limited to [appellee's] payment of 50% of the cost of replacing said engine." Answer ¶ 20. In its counterclaim appellee alleges that the cost of replacing the engine was $6,000, and it claims damages of 50% of this amount, or $3,000.

■■■ Rule 1035 of the Pennsylvania Rules of Civil Procedure provides that summary judgment is to be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). The moving party has the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether the moving party has met this burden, the court must examine the record in the light most favorable to the non-moving party. *Giannini v. Carden*, 286 Pa.Super. 450, 429 A.2d 24 (1981); *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). The court's responsibility is to determine whether a genuine issue of material fact exists; the court may not resolve such an issue. Moreover, the court should not enter summary judgment unless the case is free from doubt. *Tom Morello Construction Company, Inc. v. Bridgeport Federal Savings & Loan Association*, 280 Pa.Super. 329, 421 A.2d 747 (1980); *Amabile v. Auto Kleen Car Wash*,

*supra; McFadden v. American Oil Co.,* 215 Pa.Super. 44, 257 A.2d 283 (1969).

■ Applying these principles here, we have concluded that this is not a case for summary judgment. In finding that appellee met the requirements of Rule 1035, the lower court limited its analysis to the terms of the purchase order. It concluded that appellee's purchase order had effectively disclaimed implied warranties of merchantability and fitness for a particular purpose under 13 Pa.C.S.A. § 2316(b) because the purchase order contained the phrase "as is—where is," and because a warranty disclaimer, including the term "merchantability," appeared on the purchase order. The lower court did not consider whether appellee had effectively disclaimed express warranties under 13 Pa.C. S.A. § 2316(a), which provides that in construing words claimed to limit warranties, "words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." Since the lower court did not consider 13 Pa.C.S.A. § 2316(a), neither did it consider whether, or to what extent, the parol evidence rule would limit appellant's ability to prove appellee's alleged oral representations concerning the truck, both before and after the purchase order was signed. 13 Pa.C. S.A. § 2202.

■ Also, the lower court confined its view of the case to the purchase order. The record suggests, however, that the events on which appellant's claim is based did not end with the signing of the purchase order. As we have discussed, when appellant complained that the engine was emitting smoke, appellee undertook to repair it, and gave appellant a "30 day warranty $^{50}/_{50}$" on the engine, and "certif[ied]" that the engine was "in excellent running condition." Then, when it was discovered that the engine in fact had a cracked block, appellee replaced it, taking some sixty-seven days to do so. It is by no means clear—and the lower court did not consider—whether appellee's conduct subsequent to the execution of the purchase order resulted

in a new contractual or warranty obligation coming into being, either as a proper modification of the purchase order, or as an obligation created later than and distinct from the purchase order.

In making these comments, we do not intimate any opinion, for the record is not sufficient to support an opinion, regarding the legal effect, either of the disclaimer of warranties in the purchase order, or of appellee's conduct subsequent to the purchase order. We do know, however, that appellant has pleaded and offered proof of lost income during the period appellee was repairing his truck. *See Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39, 45 (N.D.Ill.1970). Whether he is entitled to relief will depend, it would appear, upon the effectiveness of the engine "warranty" and on appellant's ability to prove that appellee knew of his special needs when it undertook to repair the truck. *See* 13 Pa.C.S.A. § 2715. *See also R.I. Lampus Co. v. Neville Cement Products Corp.*, 474 Pa. 199, 378 A.2d 288 (1977); *Frank B. Bozzo, Inc. v. Electric Weld Division of the Fort Pitt Bridge Division of Spang Industries, Inc.*, 283 Pa.Super. 35, 423 A.2d 702 (1980).

Finally, we are not sure whether the lower court considered appellee's counterclaim for half the cost of replacing the engine. Appellee's motion for summary judgment appears to ask for judgment on the counterclaim, for it states that appellant admits that the engine was replaced, and pleads the "$^{50}/_{50}$ warranty" as "providing that [appellant] and [appellee] would equally divide the cost of repair" to the engine. Motion for Summary Judgment, ¶ s. 9–10. However, the prayer of the motion is only that "judgment be entered in [appellee's] favor and against [appellant] and dismiss the Complaint;" there is no reference in the prayer to the counterclaim. The lower court's order simply provides that the motion for summary judgment "is hereby granted, and [appellant's] Complaint is dismissed." Neither in its order nor its subsequent opinion in support of the order does the lower court refer to the counterclaim.

The order of the lower court is reversed.