513 A.2d 1029

**Rose ROLAND and Frank Roland, Appellants,**

**v.**

**KRAVCO, INC. and Peppelman Brothers, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued May 13, 1986.

Filed Aug. 6, 1986.

494

Joseph P. Grimes, Philadelphia, for appellants.

Fred J. Silverman, Willow Grove, for Kravco, appellee.

Jay H. Karsch, Doylestown, for Peppelman, appellee.

Before CAVANAUGH, WICKERSHAM and ROBERTS, JJ.

CAVANAUGH, Judge:

In this case, the appellant, Rose Roland, was injured when she slipped and fell on the parking lot at the Huntingdon Valley Shopping Center which was owned and operated by appellee, Kravco, Inc. She and her husband, Frank Roland, commenced an action in trespass against Kravco, Inc., trading as Huntingdon Valley Shopping Center, which joined Peppelman Brothers, Inc. as an additional defendant. Both defendants below, the appellees herein, filed motions

for summary judgment which were granted by the court. The plaintiffs have appealed to this court.

The complaint against Kravco alleged that:

6. On or about February 10, 1982, plaintiff, Rose Roland was a business invitee of the defendant, Huntingdon Valley Shopping Center, and as such was lawfully on or about the premises of the defendant.

7. On or about the aforesaid date, time and place, as plaintiff, Rose Roland, was walking across the parking lot after exiting her car, plaintiff's feet were caused to slip and slid [sic] on ice which had accumulated upon said parking lot causing plaintiff to fall to the ground.

The only evidence as to how the accident occurred is found in the deposition of Rose Roland in which she testified:

A. Well, I drove in and stopped and looked to see if there was any parking places close to the drugstore for me.

Q. Right.

A. I didn't see anything up there. It was filled up, and the first two lanes were filled, and so I drove around into the second set of cars, and I pulled in there and found a parking space and pulled in there.

Q. Fine. Now, when you were driving through the parking lot to find a parking place, what was the— was there any water or anything? Was there dampness on the surface of the parking lot?

A. I would say it was wet.

Q. It was wet.

A. Yes.

Q. But it was not actually raining at the time.

A. No, there was no rain.

Q. Was there any snow in the parking lot?

A. Yes. Well, it was all piled up on one side.

Q. Like it had been cleared.

A. Yes, it was all cleared up.

. . . . .

Q. What did you do after you parked your car?

A. I got out of my car, closed the door and walked straight ahead.

Q. And what happened?

A. And—I don't even know. I don't know whether I was in between the next two cars, but—I mean, I only took about three, four, five steps and I just went.

Q. What do you mean when you say you went?

A. I just went right down, slid right down.

Q. You mean you slipped?

A. I went right on down, slipped right down, yes.

Q. *What did you slip on?*

A. *I don't know.*

Q. Did you fall forward or backward?

A. Backward. I fell straight back.

. . . . .

Q. Let's go back to the date of the accident. *Where were you looking when you fell down?*

A. *Straight down to the ground. I walk with my eyes on the ground. I always look at the ground when I'm walking.*

Q. *What did you see immediately before you fell on the ground?*

A. *Nothing, just it was wet, but I knew that when I went there.*

Q. Did you see any snow in your path?

A. *No, there was no snow. I didn't see any snow.*

Q. *Did you see any ice in your path?*

A. *No, I didn't see any ice.*

Q. What kind of surface was it?

A. What do you mean, the shopping center?

Q. The shopping center parking lot.

A. I'd say it's like a blacktop.

Q. Like a blacktop.

A. Yes.

Q. Now, in your complaint I believe there's an allegation that you slipped on ice. What is the basis of that statement?

A. Slipping on ice?

Q. Yes.

A. I just figured it must have been. I mean, I just couldn't think of—I mean, I know—I mean—well, I don't know, but I didn't see a thing on the ground except—you know, it was wet and I know there was nothing in my path to trip over or to fall on.

Q. *So you just concluded that since you slipped that there must have been ice that you didn't see.*

A. That's right.

Q. Were there any puddles in your path?

A. Well, I didn't see any puddles—I mean, no, I didn't see any puddles.

Q. So the ground was just wet.

A. That's all. That's all I can see.[1]

The accident occurred at about ten o'clock in the morning and the weather was described by the plaintiff as cold and

1. As further illumination of what was observed by Rose Roland, the defendant's requests for admissions and the plaintiff's answers are helpful. Request for admission No. 1. was admitted and the request was as follows:

1. At the time of the occurrence referred to in the Complaint, Rose Roland did not see any snow or ice on the surface of the parking lot in the area where she fell.

Request for admission 2 states:

2. At the time of the occurrence referred to in the Complaint, Rose Roland did not see anything in her path on the surface of the parking lot which caused her to trip or fall.

The answer is as follows:

2. Admitted as stated. By way of further answer, Rose Roland avers that she knows what caused her to fall giving the swiftness with which her feet slipped from under her and the nature of her fall in that her feet slipped forward and she fell backward on the parking lot which appeared wet. The temperature, moreover, was below freezing.

misty. There was no evidence that there was ice on the surface of the parking lot, and in fact Mrs. Roland, who testified that she always looks at the ground when she is walking, did not see any ice on the surface and stated that it was merely wet.

■ In Pennsylvania there is no liability created by a general slippery condition on the surface of a parking lot. It must appear that there were dangerous conditions due to ridges or elevations, which were allowed to remain for an unreasonable length of time. *Bacsick v. Barnes*, 234 Pa. Super. 616, 341 A.2d 157 (1975); *Rinaldi v. Levine*, 406 Pa. 74, 176 A.2d 623 (1962). Plaintiff must also show that these ridges or elevations were the cause of the fall and in the absence of proof of this, the plaintiff has no basis for recovery. *Izzo v. Meyer*, 259 Pa.Super. 95, 393 A.2d 733 (1978). The Supreme Court stated in *Rinaldi v. Levine*, 406 Pa. at 78–79, 176 A.2d at 625–626 (1962):

> Where a property owner is charged with negligence in permitting the accumulation of snow or ice on his sidewalk, the proof necessary to sustain such a charge has been clearly defined by our decisional law. It is encumbent upon a plaintiff in such situation to prove: (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. Absent proof of *all* such facts, plaintiff has no basis for recovery. See *Miller v. City Ice & Fuel Co.*, 363 Pa. 182, 184, 69 A.2d 140 [1949]; *Milburn v. Knights of Columbus Home Association*, 167 Pa.Super. 509, 511, 76 A.2d 466 [1950].

See also *Strother v. Binkele*, 256 Pa.Super. 404, 389 A.2d 1186 (1978).

■ In the case before us, it is clear that there were no ridges and elevations of ice that caused Mrs. Roland to fall

as she would have seen them had they existed. She was looking at the ground and observed no obstacles or hazardous conditions whatsoever, and the only condition of the surface was that it was wet. There is simply no indication that there was a dangerous condition on the land. Even if a dangerous condition existed, the property owner is not liable if it is reasonable for the possessor of land to believe that the dangerous condition would be obvious to and discovered by an invitee. *Palenscar v. Michael J. Bobb, Inc.,* 439 Pa. 101, 266 A.2d 478 (1970). In *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983) the Supreme Court speaking through Chief Justice Roberts held that there would be no liability imposed upon the owner of a parking lot which had icy patches where other areas were free of ice. The plaintiff who slipped on the ice, was aware of an ice free area in which to park. The court held at 503 Pa. at 185–6, 469 A.2d at 124: "Although the question of whether a danger was know or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion."

Based on the record before us, we must decide if the court below properly granted the motions for summary judgment. Such a motion should be granted where the pleadings, discovery and affidavits reflect no genuine issue of material fact. *Loyal Christian Benefit Association v. Bender,* 342 Pa.Super. 614, 493 A.2d 760 (1985); Pa.R.C.P. 1035 (b). A summary judgment should only be entered in those cases which are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 456 A.2d 1009 (1983). The court must accept as true all well pleaded facts in the plaintiff's pleadings, and give the plaintiff the benefit of all reasonable inferences to be drawn therefrom. *Just v. Sons of Italy Hall,* 240 Pa.Super. 416, 368 A.2d 308 (1976). Nevertheless, Pa.R.C.P. 1035 (d) provides that where a motion for summary judgment has been supported by depositions, answers to interrogatories or affidavits, the non-moving party may not rest merely on the allegations of

his pleadings.[2] "Where the allegations of the non-moving party's pleading have been controverted by the moving party's supporting material, the non-moving party must by affidavit, or in some other way provided for by the rule, set forth specific facts showing that a genuine issue of material fact exists." *Tom Morello Construction Co., Inc. v. Bridgeport Federal Savings and Loan Association,* 280 Pa.Super. 329, 334–5, 421 A.2d 747, 750 (1980). See also *First Mortgage Company of Pennsylvania v. McCall,* 313 Pa.Super. 54, 459 A.2d 406 (1983).

The appellants contend that the court below erred in placing the burden of proof upon them to set forth facts showing that a genuine issue of material fact exists. However, as provided for in Pa.R.C.P. 1035 (d) the non-moving party in his response to a properly supported motion for summary judgment must in the response "by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him."[3] The appellant admitted that she did not see any ice or icy ridges on the parking lot surface, notwithstanding that she was looking at the ground at the time that she fell, and that she did not know what caused her to slip. Since by her own statements she

2. Pa.R.C.P. 1035 (d) provides in part:
   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

3. In its motion for summary judgment, defendant Kravco, Inc. stated in paragraph 5.
   5. In response to defendant's Request for Admissions, plaintiffs admitted that Rose Roland did not see any ice on the surface of the parking lot in the area where she fell at the time of the occurrence.
   In the answer to the motion, the appellants stated:
   5. Admitted. By way of further answer, plaintiff avers that although she did not actually "see" that she fell on ice, she can prove by circumstantial evidence that her fall resulted from slipping on ice.

did not observe any ice when she fell, she had the obligation to show by affidavit or otherwise that there were icy ridges or elevations which caused her to fall. On appeal, the appellant argues that she could produce two witnesses, a friend, Margaret Coyle, and Officer McNamara, who "could testify to the icy conditions of the parking lot within an hour of the appellant's fall." Nevertheless, the appellant did not disclose this information by way of affidavit, or otherwise, in response to the motion for summary judgment. As noted in Goodrich Amram, Procedural Rules Service, 2nd, § 1035 (d):5, page 460: *"The purpose of this amendment [Pa.R.C.P. 1035 (d)] is to assure that the motion for summary judgment may 'pierce the pleading' and to require the opposing party to disclose the facts of his claim or defense."* (Emphasis added.) Even if we assume that the undisclosed evidence might have affected the grant of summary judgment, the appellants chose not to disclose the basis for Mrs. Roland's claim with respect to the cause of her fall, and she did so at her own risk. That the appellant has misread Pa.R.C.P. 1035 (d) is evident by the statement in the appellant's brief at page 7–8: "Appellant contended that since plaintiff identified these witnesses on her behalf, it was appellee's burden to obtain statements from them and demonstrate to the Court that they would not so testify. *To hold otherwise would place the burden of proof upon the non-moving party in a Motion for Summary Judgment proceeding and would further give defense counsel an unintended discovery tool by requiring appellant's counsel to respond to Motions for Summary Judgment by supplying statements of witnesses to refute allegations contained in the Motion."* (Emphasis added). Rule 1035 (d) requires the non-moving party to respond and set forth specific facts showing that there is a genuine issue for trial. Our rules of civil procedure are designed to eliminate the poker game aspect of litigation and compel the players to put their cards face up on the table before the trial begins. The appellant has done noth-

ing to establish a genuine issue of material fact and accordingly summary judgment was properly entered.

Order affirmed.