585 A.2d 496

Joseph A. BUSHLESS and Ruth Anne Bushless,
his wife, Appellants,

v.

GAF CORPORATION, in its own Right and as
Successor-in-Interest to the Ruberoid
Company, et al.

v.

HEDMAN MINES, LIMITED McClain Firebrick Company.

Ralph BARBER, an Individual, Appellant,

v.

GAF CORPORATION, in its own Right and as
Successor-in-Interest to the Ruberoid
Company, et al.

Lloyd E. KELLY and Judith L. Kelly, his wife,

v.

GAF CORPORATION, in its own Right and as
Successor-in-Interest to the Ruberoid
Company, et al.

v.

HEDMAN MINES, LIMITED McClain Firebrick Company.

Robert R. EDMOND, an Individual, Appellant,

v.

GAF CORPORATION, in its own Right and as
Successor-in-Interest to the Ruberoid
Company, et al.

v.

HEDMAN MINES, LIMITED McClain Firebrick Company.

Superior Court of Pennsylvania.

Argued June 21, 1990.

Filed Aug. 14, 1990.

Theodore Goldberg, Pittsburgh, for appellants (at 1425, 1426, 1427 and 1428).

James S. Ehrman, Pittsburgh, for John Crane–Houdaille, appellee (at 1425, 1426, 1427 and 1428).

Thomas R. Wright, Pittsburgh, for GAF Corp., appellee (at 1425, 1426, 1427 and 1428).

Fredric E. Orlansky, Pittsburgh, for Owens–Corning, appellee (at 1426 and 1428).

Before CIRILLO, President Judge, and OLSZEWSKI and TAMILIA, JJ.

CIRILLO, President Judge:

These appeals are from four orders of the Court of Common Pleas of Beaver County. The orders, dated May 10, 1989, granted summary judgment in favor of defendants GAF Corporation, *et al.* ("Defendants"), and against plaintiffs Joseph A. Bushless, and his wife, Ruth Anne Bushless; Ralph S. Barber; Lloyd E. Kelly and his wife, Judith L. Kelly; and Robert Edmond ("Plaintiffs"). Pursuant to Pennsylvania Rule of Appellate Procedure 513, we have consolidated these cases on appeal.[1] We affirm.

Plaintiffs, between the years 1956 and 1987, were employed in varying capacities by Babcock & Wilcox ("B & W"). Plaintiffs alleged in their complaints that while employed by B & W, they used, and worked in proximity to, various asbestos-containing products. In 1987, Plaintiffs were diagnosed as suffering from asbestosis[2] as a result of inhaling asbestos dust and fibers from these products.

1. Pennsylvania Rule of Appellate Procedure 513 provides in part:
   Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.
   Pa.R.A.P. 513.

2. Asbestosis, the earliest known and most common asbestos-related disease, is a latent disease that manifests itself 10 to 40 years after exposure to significant quantities of asbestos. Inhalation of asbestos fibers initiates a scarring process that destroys air sacs in healthy lung tissue. The result is a decrease in pulmonary function and lung volume. Other diseases associated with the inhalation of asbestos fibers are mesothelioma and lung cancer. L. Selikoff & D. Lee,

Plaintiffs instituted asbestos products liability suits against several defendants, including manufacturers, distributors, and miners of asbestos and asbestos-containing products. During discovery, questions were posed to the Plaintiffs concerning their personal knowledge of the asbestos-containing products to which they were exposed. Plaintiffs indicated, in deposition testimony and answers to interrogatories, that they could not personally remember the names of the manufacturers or suppliers. Thereafter, several Defendants filed motions for summary judgment. In support of their motions for summary judgment, Defendants relied primarily upon Plaintiffs' inability to identify the manufacturers or suppliers of the asbestos-containing products to which they were exposed.

Plaintiffs responded to the motions for summary judgment, and included the following attachments in their responses: (1) Plaintiffs' own affidavits indicating the years employed by B & W and the departments in which they worked, and the affidavits of co-workers; (2) Plaintiffs' answers to standard short-set interrogatories, which provided a list of co-workers who could allegedly identify asbestos-containing products; and (3) Defendants' answers to interrogatories, which contained the names of their asbestos-containing products. At this point, the procedural history in each case differs slightly. With respect to plaintiff Barber's case, all Defendants, except Owens–Corning Fiberglas Corporation ("OCF") and John Crane, Inc. ("Crane"), filed a reply to Barber's response. Attached to the reply was selected deposition testimony which Defendants claimed proved that the co-worker affidavit provided by Barber was a "sham." With respect to plaintiff Kelly's case, all Defendants except Crane filed a reply to Kelly's response. Attached to each reply was selected deposition testimony which Defendants claimed proved that one co-worker's affidavit provided by Kelly was a "sham." In

*Asbestos and Disease* 143–56, 241–44, 262–66, 307–21 (1978); *see also* Note, *Asbestos Litigation,* 36 Vand.L.Rev. 573, 579 (1983).

plaintiff Bushless' case and plaintiff Edmond's case, no replies to the responses were filed.

On May 10, 1989, the Honorable Thomas C. Mannix issued four orders. With respect to plaintiff Barber and plaintiff Edmond, summary judgment was granted in favor of the following defendants: GAF; Armstrong World Industries, Inc., ("Armstrong"); Keene Corporation ("Keene"); Pittsburgh Corning Corporation ("Pittsburgh Corning"); H.K. Porter, Inc. ("Porter"); The Gage Company ("Gage"); Owens–Corning Fiberglas Corporation ("OCF"); Crane; Owens–Illinois, Inc. ("Owens–Illinois"); A.P. Green Refractories Company ("Green"); and Quigley Company, Inc. ("Quigley"). With respect to plaintiff Bushless, summary judgment was entered in favor of defendants Keene, Armstrong, Pittsburgh Corning, Crane, Porter, Green, Quigley and Gage. In plaintiff Kelly's case, summary judgment was granted in favor of defendants Keene, Armstrong, Pittsburgh Corning, Crane, Porter, Green, Quigley, Owens–Illinois, and Gage. These appeals followed. The following issues are presented for our review:

1. Did the trial court err in granting appellees' motions for summary judgment, when appellees supported their motions solely with the failure by appellant to identify appellees' products in his deposition, and therefore, as a matter of law, failed to properly support their motions in accordance with Pa.R.C.P. 1035?

2. Did the trial court err in granting appellees' motion for summary judgment, when the affidavits of appellant and his co-worker, appellant's answers to interrogatories, and appellees' answers to interrogatories, established on their face that a genuine issue of material fact exists as to whether appellant was exposed to appellees' products?

3. Did the trial court err in failing to vacate the prior entry of summary judgment in appellees' favor, when the affidavits of appellant and his co-worker, appellant's answers to interrogatories, and appellees' answers to interrogatories, read in the context of the scientific and medical evidence submitted by appellant upon requesting re-

consideration, established that a genuine issue of material fact exists as to whether appellant was exposed to appellees' products?

When reviewing an order granting summary judgment, our function is to determine whether triable issues of fact exist. *Bobb v. Kraybill,* 354 Pa.Super. 361, 511 A.2d 1379 (1986). A motion for summary judgment may properly be granted only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Pa.R.C.P. 1035(b). This court has stated that

> [a] motion for summary judgment should only be entered in cases which are clear and free from doubt. *Weiss v. Keystone Mack Sales, Inc.,* 310 Pa.Super. 425, 456 A.2d 1009 (1983). The court must accept as true all well pleaded facts in the plaintiff's pleadings, and give the plaintiff the benefit of all reasonable inferences to be drawn therefrom. *Just v. Sons of Italy Hall,* 240 Pa.Super. 416, 368 A.2d 308 (1976).

*Roland v. Kravco, Inc.,* 355 Pa.Super. 493, 499, 513 A.2d 1029, 1033 (1986); *see also* Pa.R.C.P. 1035; *Lucera v. Johns–Manville Corp.,* 354 Pa.Super. 520, 512 A.2d 661 (1986). A trial court's grant of a motion for summary judgment will be overturned only if there has been a clear abuse of discretion or an error of law. *McCain v. Pennbank,* 379 Pa.Super. 313, 549 A.2d 1311 (1988).

Once a motion for summary judgment is made and supported, *see* Pa.R.C.P. 1035(a), the non-moving party may not rest upon mere allegations or denials in his or her pleadings. Pa.R.C.P. 1035(d). Rule 1035(d) requires that "by affidavits or as otherwise provided in this rule, [the non-moving party] must set forth specific facts showing that there is a genuine issue for trial." Pa.R.C.P. 1035(d). Thus, once the summary judgment motion is supported, "the burden is upon the non-movant to disclose evidence

that is the basis for his or her argument resisting summary judgment." *Samarin v. GAF Corporation*, 391 Pa.Super. 340, 347, 571 A.2d 398, 402 (1989), *citing Roland*, 355 Pa.Super. at 501, 513 A.2d at 1034. In order to uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. *Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983).

▇▇▇▇ In order for liability to attach in a products liability suit, a plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). In an asbestos-related products liability suit, the plaintiff must show more than the mere presence of asbestos-containing products in his workplace. *Eckenrod v. GAF Corporation*, 375 Pa.Super. 187, 192, 544 A.2d 50, 52 (1988). Additionally, in order to defeat a motion for summary judgment a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. *Id.; Samarin, supra; see also Annotation, Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury*, 51 A.L.R.3d 1344 (1973).[3] Two recent decisions of this court

---

3. Recently, in *Taylor v. The Celotex Corporation*, 393 Pa.Super. 566, 574 A.2d 1084 (1990), this court was presented with an appeal from an order denying defendants' motion for judgment n.o.v. on the ground that plaintiff failed to prove that his injuries had been specifically caused by products manufactured by the defendants. In order to establish his exposure to asbestos products manufactured by the defendants, Taylor relied on the testimony of three of his co-workers. The trial court stated:

> [T]hrough the various [co-worker] witnesses, the evidence presented shows that the various defendant companies' products were on the several ships that the plaintiff worked on. [sic]. We note that the various witnesses, one or the other, not only placed the material outside or off the ship but on the ship. This testimony related to all five defendants. Accordingly, a sufficient nexus between William Taylor's exposure to asbestos, and the products of the five remaining defendants[,] Eagle–Picher, Keene, Celotex, Owens–Illinois and Pittsburgh Corning Corporation[,] has been established.

393 Pa.Super. at 580, 574 A.2d at 1091. On appeal, this court agreed that under New Jersey law the testimony of Taylor's co-workers

have established that generalized product identification is insufficient to withstand summary judgment: *Eckenrod, supra,* and *Samarin, supra.*

In *Eckenrod,* plaintiff filed suit against various defendant manufacturers, alleging that her husband's death was caused by exposure, during his employment with Babcock & Wilcox ("B & W"), to various asbestos products manufactured by the defendants. Defendants filed motions for summary judgment based on plaintiff's lack of product identification. The trial court granted defendants' motions, and plaintiff appealed. This court affirmed. Judge Olszewski, writing for the majority, reviewed the evidence presented by plaintiff in her response to defendants' motions for summary judgment:

> Eckenrod contends that her decedent used asbestos gloves supplied by A–Best for twenty years, asbestos cloth supplied by A–Best for fifteen years, and asbestos cloth supplied by Porter for eight years while employed by B & W in the furnace area of the Wallace Run Facility. In support of her assertion, [Eckenrod] claims that traveling requisition forms place both companies as a supplier of the products to B & W. In order to place her husband in the vicinity of the asbestos products and to detail his work activities, [Eckenrod] relied on affidavits of three co-workers. The affiants indicated that they had worked with the decedent "upon occasion" at the Wallace Run Facility[.]

375 Pa.Super. at 191, 544 A.2d at 52. This court determined that Eckenrod's evidence was insufficient to withstand the grant of summary judgment. Despite the affiants' statements that the decedent was exposed to asbestos, there was no statement that the decedent

established that Taylor had been on specific ships and submarines at times when the defendants' products were present and that Taylor had worked in close proximity to such products. *Id.,* 393 Pa.Superior Ct. at 580–81, 574 A.2d at 1092. The *Taylor* court held that "plaintiff established a sufficient use of [defendants'] products to enable a jury to find that he had been exposed to asbestos products which had been manufactured by [defendants,]" and concluded that the evidence "was sufficient to meet plaintiff's burden of causation." *Id.,* 393 Pa.Superior Ct. at 580–81, 574 A.2d at 1091–92.

worked exclusively or continuously at the Wallace Run furnace during his period of employment. Further, each [affiant] indicated "exposure" to asbestos products but did not elaborate on the nature or length of the exposure or the brand of products available. Additionally, ... none clarified the proximity of the products to the workers or that the [defendants] were the manufacturers/suppliers of the products being used. In fact, the only testimony as to the identification of *any* of the products came from the depositions of distributors of the asbestos products and one main plant storeroom employee at B & W. Each of these depositions indicates that various [defendants] sold asbestos products to B & W, but do not establish where the specific product was used or that Mr. Eckenrod came into contact with an identifiable product. 375 Pa.Super. at 191–92, 544 A.2d at 52–53. *See Berkebile, supra.* The court, acknowledging that the facts indicated the decedent was exposed to asbestos, concluded that summary judgment was proper where there was no evidence "as to the regularity or nature of decedent's contact with asbestos." *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 53. Moreover, "the mere fact that [defendant's] asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered." *Id., citing Pongrac v. Consolidated Rail Corp.,* 632 F.Supp. 126 (E.D.Pa.1985) and *Anastasi v. Pacor, Inc.,* No. 6251 (C.P. Phila Co., March 8, 1983) *aff'd,* 349 Pa.Super. 610, 503 A.2d 44 (1985).

Likewise, in *Samarin,* the defendant manufacturers filed motions for summary judgment, claiming that the plaintiffs could not establish that they or their decedents were exposed to the particular products of the defendants. The plaintiffs' responses to the summary judgment motions merely listed co-workers' names and the names of asbestos manufacturers and suppliers that each person could apparently identify as having supplied asbestos-containing products to the workplace. In addition, plaintiffs' answers to

interrogatories listed names of persons who would testify that the plaintiffs or their decedents were exposed to certain asbestos products manufactured by defendants. Defendants argued in their summary judgment motions that the plaintiffs had failed to establish the necessary connection between their products and any alleged injury. The trial court granted summary judgment in favor of defendants, and plaintiffs appealed. We affirmed. Judge Beck, writing for the majority, stated:

> These responses to the interrogatories do not include any information on the relationship of any of the persons listed to appellants or their decedents or the relationship of the listed asbestos containing products to appellants or their decedents. Under *Roland v. Kravco, Inc., supra*, it is appellants' burden to be more specific and to reveal the relevant facts that these witnesses would testify to. From these facts, the trier of fact should be able to deduce that the listed person had some knowledge of the appellant's work-place and some knowledge that appellants were exposed to appellees' products which contained some asbestos. It is not appellees' burden to depose each potential witness for the purpose of showing that they are not able to establish a relationship between appellants or their decedents and appellees' products. Not having established this relationship themselves, appellants leave themselves exposed to summary judgment in favor of appellees.

391 Pa.Super. at 348, 571 A.2d at 403; *see also* Pa.R.C.P. 1035.

■ Having reviewed the relevant law, we will apply the principles of *Eckenrod* and *Samarin* to each of the four cases on appeal. Because each of the three issues raised by the appellants concerns the propriety of the grant of summary judgment, we will address the claims simultaneously.

As we stated above, in order to defeat a motion for summary judgment, a plaintiff must present evidence to show: (1) that the plaintiff was at a particular job site; (2) that the plaintiff was exposed to asbestos-containing prod-

ucts at that site; and (3) that a defendant's asbestos-containing product was at that particular job site at or about the same time as the plaintiff. *Eckenrod,* 375 Pa.Super. at 191, 544 A.2d at 52. "Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury." *Id.*

*Kelly*

In response to the motions for summary judgment filed by Defendants, Kelly provided a list of co-workers who could allegedly identify asbestos-containing products in the vicinity where he worked; this list had been attached to Kelly's answers to Defendants' interrogatories. Kelly also offered his own affidavit, as well as the affidavit of alleged co-worker Krukenberg.

In his affidavit, Kelly stated that he worked in the Hot Finish Department of the Main Tube Plant at B & W from 1959 to 1964. He also stated that he worked ten to twenty feet below pipefitters approximately twice a month, and that these pipefitters would use asbestos-containing material in the process of making repairs. Kelly stated that he knew the pipe covering contained asbestos based on his "experience as a tradesman for well over twenty years, because that pipecovering could withstand the high temperatures of the steamlines and the waterlines" and because "all tradesmen referred to the pipecovering as asbestos containing pipecovering." Kelly does not mention Krukenberg in his affidavit. Krukenberg, in his affidavit, stated that he worked in the Hot Finish Department at the Main Tube Plant from 1959 until 1964, and that he "installed and removed asbestos containing pipecovering from the steamlines and waterlines." Krukenberg does not mention that he knew Kelly or worked near Kelly. In response to the motion for summary judgment filed by defendant Crane, Kelly provided a list of co-workers who worked with him and who could allegedly identify asbestos-containing products. He also provided the affidavit of co-worker Fred Funkhouser. Funkhouser stated that he worked in the Wallace Run Plant and knew Kelly. He stated that he

worked as a pipefitter from 1962 to 1986, and that from 1967 to 1982 he installed and removed asbestos packing at a distance of five to ten feet from Kelly. He stated that the packing was manufactured by Crane, and that he knew the packing contained asbestos because of his "twenty-four years experience as a pipefitter and the ability of the ... Crane packing to withstand the extremely high temperatures of the pumps and valves.

### Barber

In response to Defendants' motions for summary judgment, Barber also referred to the list of names which he had included in his answers to interrogatories. The list included the names of eighty-nine individuals who purportedly had information concerning asbestos-containing products at B & W. Barber also included in his response his own affidavit, as well as that of Krukenberg. In his affidavit, Barber stated that he worked as a millwright/welder in the Cold Draw Department at the Main Plant of B & W from 1964 to 1980, and that he worked near Krukenberg on occasion. Barber stated that Krukenberg, a pipefitter, installed and removed asbestos-containing pipecovering from steamlines and waterlines. He stated that this process created dust which he was forced to inhale at a distance of ten to twenty feet. Barber further stated that he was exposed to asbestos as a result of other work performed by Krukenberg and other pipefitters, including cloth cutting and applying packing material to pumps and valves. Barber stated that he knew the material used by the pipefitters contained asbestos due to his "experience as a tradesman for over 16 years and because the job applications called for asbestos pipecovering," and because of the ability of the material to withstand heat.

Krukenberg, in his affidavit, stated that he worked with Barber from 1964 until 1980, often in the same immediate area, or side by side, for approximately six to eight weeks each year. He also stated that Barber was exposed to asbestos-containing pipecovering manufactured by several Defendants, including Owens–Corning, Pittsburgh Corning,

GAF, and Armstrong. Krukenberg based his knowledge that the pipecovering contained asbestos on his "experience as a tradesman for 23 years and because the job applications called for asbestos pipecovering."

### Edmond

In his response to Defendants' motions for summary judgment, Edmond included a list of co-workers who could allegedly identify asbestos-containing products manufactured by certain Defendants. Edmond also included his own affidavit as well as that of Krukenberg. Edmond stated in his affidavit that he worked at the South Mill in the Main Plant of B & W from 1963 to 1982, that he worked with Krukenberg on a daily basis for a three week period, approximately four times each year, and that Krukenberg installed and removed pipecovering which contained asbestos. Edmond stated that he knew the pipecovering contained asbestos "because of his experience as a tradesman for over 25 years and because the packing and gasket materials could withstand high temperatures."

Krukenberg, in his affidavit, stated that from 1963 until 1982 he worked approximately fifteen to thirty feet from Edmond for three week periods approximately three to four times each year. Krukenberg stated that he installed and removed pipecovering, that he cut and installed asbestos packing material and gaskets, that the pipecovering and packing material contained asbestos, and that as a result Edmond was exposed to asbestos. He based his knowledge that the pipecovering contained asbestos on "his experience as a tradesman for over 23 years and because it said "asbestos rope packing" and/or "asbestos pump packing" directly on the boxes of packing." Krukenberg identified specific manufacturers, including OCF, Pittsburgh Corning, GAF, Armstrong, Crane, Gage, and Porter.

### Bushless

In his response to the summary judgment motions filed by Defendants, Bushless included a list of co-workers who could allegedly identify asbestos-containing products, his own affidavit, and the affidavit of Krukenberg and Funk-

houser. In his affidavit, Bushless stated that he was employed at B & W in the Choppily Plant from 1965 until 1968, and in the Wallace Run Plant (Bar Mill Department, Bar Conditioning Department, and Bloom Conditioning Department) from 1968 to 1975 or 1976. He stated that while at the Wallace Run Plant he worked ten to twenty feet from pipefitters who used asbestos-containing pipecovering, gaskets, packing and cloth. He identified GAF as the manufacturer of the asbestos-containing pipecovering.

Funkhouser stated in his affidavit that he installed and removed asbestos gaskets while maintaining various pumps and valves in the Wallace Run Plant, and that he worked approximately five to twenty feet from Bushless from 1970 to 1975. Funkhouser identified Crane as the manufacturer of asbestos packing, and stated that he knew the packing contained asbestos "because of his twenty-four years experience as a pipefitter and the ability of the John Crane packing to withstand the extremely high temperatures of the pumps and valves."

Krukenberg stated in his affidavit that he worked in the Wallace Run Plant (Bar Mill Department and Bloom Conditioning Department) every two weeks for a period of one day to two weeks, and that while there he installed and removed asbestos-containing pipecovering. He identified Defendants Armstrong and Pittsburgh Corning as manufacturers of the asbestos-containing pipecovering, citing his experience as a tradesman for over twenty years as the source of his knowledge that the pipecovering contained asbestos, and his statement that the job application called for asbestos pipecovering. Krukenberg did not state that he knew Bushless, nor did he indicate that he worked near him.

In these cases, as in all asbestos cases, the burden of proof is on the non-moving party to establish that the plaintiff was exposed to the asbestos-containing product of a particular manufacturer. *Paparelli v. GAF Corp.*, 379 Pa.Super. 62, 549 A.2d 597 (1988). It is the duty of the non-moving party to establish those facts on the record

which would show that there exists a genuine issue of material fact. *Roland v. Kravco, Inc.,* 355 Pa.Super. at 501, 513 A.2d at 1034.

We note initially that Plaintiffs' statements and the statements of Krukenberg and Funkhouser pertaining to their knowledge that the pipecovering contained asbestos, are insufficient to show that there exists a genuine issue of fact. *See Samarin,* 391 Pa.Super. at 361, 571 A.2d at 409 (summary judgment in favor of manufacturers was proper where the "only evidence offered ... to establish that the products at issue contained asbestos [were] affidavits stating that the products were resistant to high temperatures and/or other tradesmen stated they were asbestos ..."). In addition, merely listing the names of various co-workers who could allegedly identify the asbestos-containing products in his workplace is insufficient to establish the existence of a genuine issue of fact. *Id.* After a careful review of the record, we are unable to find that the trial court committed a clear abuse of discretion or an error of law in its conclusion that no genuine issue of fact existed. Although the evidence indicates that Plaintiffs may have had some exposure to asbestos, the pleadings, depositions, interrogatories and affidavits of record do not provide a sufficient nexus to link *any particular Defendant's product to the Plaintiffs' work vicinity. Eckenrod, supra; Samarin, supra.*

> The mere fact that [defendants'] asbestos products came into the facility does not show that the [plaintiff] ever breathed these specific products or that he worked where these asbestos products were delivered.... Absent testimony of record that identifies [defendants'] products as being present in the [vicinity in which plaintiff worked], there is not even a reasonable inference that [plaintiff] was exposed to [defendants'] asbestos products.

*Eckenrod,* 375 Pa.Super. at 192–93, 544 A.2d at 53.

With respect to Krukenberg's statement in his affidavit that he recalled the name of defendant Porter on the tag of a spool of asbestos cloth, we note that his prior sworn

deposition testimony indicates otherwise. In his deposition testimony of May 31, 1988, Krukenberg was unable to identify any manufacturer or supplier of the cloth. In addition, in his deposition testimony of January 7, 1983, Krukenberg was also unable to identify any manufacturer or supplier of the cloth, and specifically stated that he did not see any tags on the rolls of asbestos cloth. Moreover, there is no evidence indicating that Barber or Edmond ever worked in the vicinity of the asbestos cloth. *Eckenrod, supra.*

In response to Defendants' interrogatory # 22, which requested information obtained from others about Plaintiffs' exposure to asbestos dust and asbestos product, Plaintiffs provided a list of co-workers who could allegedly identify particular products and manufacturers, with a statement that "Plaintiff placed a check by the names of co-workers he recalls working with or around during his career at Babock & Wilcox." As was the case in *Samarin,*

> [t]he lists were structured to provide a person's name, address, the years worked at B & W, in some cases the jobs performed for B & W, and a list of names of asbestos manufacturers and suppliers that each person could apparently identify as having supplied asbestos containing products to B & W. These responses to the interrogatories do not include any information on the relationship of any of the persons listed to [plaintiffs] . . . or the relationship of the listed asbestos containing products to [plaintiffs].

*Samarin,* 391 Pa.Super. at 348, 571 A.2d at 403. This response was rejected in *Samarin,* and thus must be rejected here. Having failed to establish "the relationship between [plaintiff] and [defendants'] products, . . . [plaintiffs have left] themselves exposed to summary judgment in favor of [defendants]." *Samarin,* 391 Pa.Super. at 348, 571 A.2d at 403.[4]

Orders affirmed.

4. Because Plaintiffs have failed to establish that they were exposed to asbestos-containing products manufactured by Defendants, we do not

reach the issue of whether Plaintiffs' scientific and medical evidence
submitted in their motions for reconsideration satisfied the proximity
requirement enunciated in *Eckenrod.*