664 A.2d 1015

Ursula JOBE, Individually and as Administratrix of the
Estate of James H. Jobe, Deceased, Appellant,

v.

W.P. METZ REFINING, Handy and Harman, and United Chemi-
cals, Inc., Chemply, Inc., Carmac Chemical Company, Amax
Lead & Zinc, Inc., Amax, Inc., Asarco, Inc., Federated Metals
Corporation, and Metz Metallurgical Corporation, Appellees.

Ursula JOBE, Individually and as Administratrix of the
Estate of James H. Jobe, Deceased, Appellant,

v.

W.P. METZ REFINING, Handy and Harman, and United Chemi-
cals, Inc., Chemply, Inc., Carmac Chemical Company, Amax
Lead & Zinc, Inc., Amax, Inc., Asarco, Inc., Federated Metals
Corporation, and Metz Metallurgical Corporation, Appellees.

Ursula JOBE, Individually and as Administratrix of the
Estate of James H. Jobe, Deceased, Appellant,

v.

W.P. METZ REFINING, Handy and Harman, and United Chemi-
cals, Inc., Chemply, Inc., Carmac Chemical Company, Amax
Lead & Zinc, Inc., Amax, Inc., Asarco, Inc., Federated Metals
Corporation, and Metz Metallurgical Corporation, Appellees.

Ursula JOBE, Individually and as Administratrix of the
Estate of James H. Jobe, Deceased, Appellant,

v.

W.P. METZ REFINING, Handy and Harman, and United Chemi-
cals, Inc., Chemply, Inc., Carmac Chemical Company, Amax
Lead & Zinc, Inc., Amax, Inc., Asarco, Inc., Federated Metals
Corporation, and Metz Metallurgical Corporation, Appellees.

**Ursula JOBE, Individually and as Administratrix of the Estate of James H. JOBE, Deceased, Appellant,**

v.

**W.P. METZ REFINING, Handy and Harman, and United Chemicals, Inc., Chemply, Inc., Carmac Chemical Company, Amax Lead & Zinc, Inc., Amax, Inc., Asarco, Inc., Federated Metals Corporation, and Metz Metallurgical Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued May 18, 1995.

Filed Aug. 28, 1995.

78

Michael E. Lang, Pittsburgh, for appellant.

Kenneth J. Cammarato, Pittsburgh, for Amax Lead, Amax, Inc. & Asarco, Inc., appellees.

Eric Horne, Pittsburgh, for Federated Metals, appellee.

Before: POPOVICH, HUDOCK [1] and OLSZEWSKI, JJ.

POPOVICH, Judge:

We are asked to review the grant of motions for summary judgment in favor of defendants/appellees, Amax, Inc., Amax Lead & Zinc, Inc., Asarco, Inc. and Federated Metals Corp. We affirm.

In reviewing the grant of a motion for summary judgment, we, as an appellate court, are to examine the record in a light most favorable to the non-moving party. *Knecht v.*

[1] Hudock, J. did not participate in the consideration or decision of this matter.

*Citizens & Northern Bank,* 364 Pa.Super. 370, 528 A.2d 203, 205 (1987). Further, this Court must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as admissions on file, and give the non-movant the benefit of all reasonable inferences which may be drawn therefrom. *Ferguson v. King,* 362 Pa.Super. 543, 524 A.2d 1372, 1373 (1987). All doubts and ambiguities are to be resolved in the non-movant's favor. *Wheeler v. Johns–Manville Corp.,* 342 Pa.Super. 473, 493 A.2d 120, 123 (1985).

Consistent with the preceding, the record discloses that James H. Jobe was employed as a machinist from 1964 until 1984 at a plant in Delmont, Pennsylvania, operated by Gibson Electric, Inc., which was succeeded in interest by GTE Products Corp. Upon Jobe's death, his wife, individually and as administratrix of his estate, filed an eight-count complaint alleging Jobe's exposure to carcinogenic material (e.g., cadmium) manufactured, distributed, sold and/or supplied to Jobe's employer by the appellees [2] caused his death.

After the submission of numerous pleadings (e.g., preliminary objections, answer with new matter, replies, interrogatories, production of documents and amended complaint) and depositions, the appellees filed motions for summary judgment; Amax Lead & Zinc, Inc. and Amax, Inc. (successor to Amax Lead & Zinc, Inc.) had their motions granted June 10, 1994, and July 11, 1994, respectively; and Federated Metals Corp. and Asarco, Inc. (successor to Federated Metals Corp.) had their reconsideration motions for summary judgment granted August 18, 1994, and September 1, 1994, respectively. An appeal was perfected after the last motion for summary judgment was granted on October 11, 1994.[3]

2. The appellant also alleged that carcinogenic supplies were sold to her husband's employer by W.P. Metz Refining, Handy and Harman, United Chemicals, Inc., Chemply, Inc., Carmac Chemical Co. and Metz Metallurgical Corp., each of which was named as a defendant but none are parties in the instant appeal. Further, the appellant included the successor-in-interest employer/GTE Products Corp. in the suit. However, with GTE's motion for summary judgment being granted by order of July, 1989, it was not a party with the perfection of this appeal thereafter.

3. October 11, 1994, was the date that the motion for summary judgment of the defendants-UCI Holdings, Inc., Chemply, Inc. and Carmac Chemical Co. was granted. This October 11th order made all other

80

The first four issues posed claim court error in granting the appellees' motions for summary judgment on the ground that "a reasonable question of fact [existed regarding whether] th[e] decedent was exposed to the [appellees'] cadmium containing products." Appellant's Brief at 7.

In this jurisdiction, regarding products liability suits, a plaintiff must establish that his/her injuries were caused by the product of a particular manufacturer or supplier. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). Additionally, what was stated in a trilogy of cases concerning the sufficiency of the evidence to withstand a motion for summary judgment in asbestos suits we find to be applicable here.

We begin with *Bushless v. GAF Corp.*, 401 Pa.Super. 351, 585 A.2d 496 (1990), wherein the rulings of *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398 (1989) were capsulized as establishing that generalized product identification was insufficient to withstand summary judgment. Also, each plaintiff failed to establish a genuine issue of fact as to the "regularity and frequency" with which each was exposed to the defendants' asbestos products. In doing so, this Court wrote:

> In *Eckenrod*, plaintiff filed suit against various defendant manufacturers, alleging that her husband's death was caused by exposure, during his employment with Babcock & Wilcox ("B & W") to various asbestos products manufactured by the defendants. Defendants filed motions for summary judgment based on plaintiff's lack of product identification. The trial court granted defendants' motions, and plaintiff appealed. This court affirmed . . . [stating]:
>
> > Eckenrod contends that her decedent used asbestos gloves supplied by A–Best for twenty years, asbestos

orders in this case final pursuant to Pa.R.App.P. 341(b)(1), i.e., all claims and/or all parties had not yet been disposed of until October 11th. Until these defendants had their motions for summary judgment resolved, the earlier disposed of motions for summary judgment under review here did not become final for appeal purposes (per Rule 341) until October 11, 1994, when the last remaining defendants were granted summary judgment.

cloth supplied by A–Best for fifteen years, and asbestos cloth supplied by Porter for eight years while employed by B & W in the furnace area of the Wallace Run Facility. In support of her assertion, [Eckenrod] claims that traveling requisition forms place both companies as a supplier of the products to B & W. In order to place her husband in the vicinity of the asbestos products and to detail his work activities, [Eckenrod] relied on affidavits of three co-workers. The affiants indicated that they had worked with the decedent "upon occasion" at the Wallace Run Facility[.]

375 Pa.Super. at 191, 544 A.2d at 52. This court determined that Eckenrod's evidence was insufficient to withstand the grant of summary judgment. Despite the affiants' statements that the decedent was exposed to asbestos there was no statement that the decedent

worked exclusively or continuously at the Wallace Run furnace during his period of employment. Further, each [affiant] indicated "exposure" to asbestos products but did not elaborate on the nature or length of the exposure or brand of products available. Additionally, ... none clarified the proximity of the products to the workers or that [defendants] were the manufacturers/suppliers of the products being used. In fact, the only testimony as to the identification of *any* of the products came from the depositions of distributors of the asbestos products and one main plant storeroom employee at B & W. Each of those depositions indicates that various [defendants] sold asbestos products to B & W, but do not establish where the specific product was used or that Mr. Eckenrod came into contact with an identifiable product.

375 Pa.Super. at 191–92, 544 A.2d at 52–53. *See Berkebile, supra.* The court ... concluded that summary judgment was proper where there was no evidence "as to the regularity or nature of decedent's contact with asbestos." Moreover, [the court noted that] "the mere fact that [defendant's] asbestos products came into the facility d[id] not show that the decedent ever breathed these specific asbestos products

or that he worked where these asbestos products were delivered."

Likewise, in *Samarin*, the defendant manufacturers filed motions for summary judgment, claiming that the plaintiffs could not establish that they or their decedents were exposed to the particular products of the defendants. The plaintiffs' responses to the summary judgment motions merely listed co-workers' names and the names of asbestos manufacturers and suppliers that each person could apparently identify as having supplied asbestos-containing products to the workplace. In addition, plaintiffs' answers to interrogatories listed names of persons who would testify that the plaintiffs or their decedents were exposed to certain asbestos products manufactured by defendants. Defendants argued in their summary judgment motions that the plaintiffs had failed to establish the necessary connection between their products and any alleged injury. The trial court granted summary judgment in favor of defendants, and plaintiffs appealed. We affirmed ... [stating]:

> These responses to the interrogatories do not include any information on the relationship of any of the persons listed to appellants or their decedents or the relationship of the listed asbestos containing products to appellants or their decedents. Under *Roland v. Kravco, Inc., supra*, it is appellants' burden to be more specific and to reveal the relevant facts that these witnesses would testify to. From these facts, the trier of fact should be able to deduce that the listed person had some knowledge of the appellant's workplace and some knowledge that appellants were exposed to appellees' products which contained some asbestos. It is not appellees' burden to depose each potential witness for the purpose of showing that they are not able to establish a relationship between appellants or their decedents and appellees' products. Not having established this relationship themselves, appellants leave themselves exposed to summary judgment in favor of appellees.

391 Pa.Super. 348, 571 A.2d at 403; *see also* Pa.R.C.P. 1035.

Having reviewed the relevant law, we will apply the principles of *Eckenrod* and *Samarin* to ... cases on appeal.

\* \* \* \* \* \*

[The *Bushless* court] note[d] initially that Plaintiffs' statements and statements of [co-employees] Krukenberg and Funkhouser pertaining to their knowledge that the pipecovering contained asbestos, [we]re insufficient to show that there exist[ed] a genuine issue of fact. \* \* \* In addition, merely listing the names of various co-workers who could allegedly identify the asbestos-containing products in his workplace is insufficient to establish the existence of a genuine issue of fact. *Id.* After a careful review of the record, we are unable to find that the trial court committed a clear abuse of discretion or an error of law in its conclusion that no genuine issue of fact existed. Although the evidence indicates that Plaintiffs may have had some exposure to asbestos, the pleadings, depositions, interrogatories and affidavits of record do not provide a sufficient nexus to link *any particular Defendant's product to the Plaintiffs' work vicinity.* [Emphasis in original]

401 Pa.Super. at 358–60, 363–64, 585 A.2d at 500–501, 503 (Citations omitted).

What is to be garnered from the *Bushless, Samarin* and *Eckenrod* line of cases regarding asbestos suits is applicable to the sufficiency of a complaint seeking damages for alleged exposure to carcinogens (e.g., cadmium) against a motion for summary judgment. To-wit, that the employee/decedent/Jobe was at a particular worksite; that the employee/decedent/Jobe was exposed to carcinogenic-containing products at that site; and that a defendant's carcinogenic-containing products was at that particular worksite at or about the same time as the employee/decedent/Jobe. *Bushless,* supra, 401 Pa.Super. at 359–61, 585 A.2d at 501, citing *Eckenrod,* supra, 375 Pa.Super. at 191, 544 A.2d at 52.

At bar, given the decedent's death prior to the institution of this lawsuit, the plaintiff relies solely upon the deposition testimony of former employees at Gibson Electric to

establish the "identification" of the carcinogenic-containing product, the seller/manufacturer of the product and the "frequency and regularity" with which the decedent was exposed to cadmium-related products while on the job site.

For example, Chester Zielinski was employed by Gibson Electric from 1968 to 1984 as a "header operator" in that department making rivets. However, when work was slow, Zielinski would work in other areas of the plant as well, to-wit:

> On a typical day [Zielinski and decedent] would be ... working in the header department ... in inspection, tool room, furnace room, ... shipping, and receiving if you had to go in there for any reason * * * when work was slow if they needed help in the [powder room]-foreman told [you] where he would want you to go work ... either sometime work in powder room breaking down powder, could be cleaning room, degreasing material for inspection or you would be loading tumblers ... [and] Jobe d[id] similar type work.

RR. 131a–132a. The remaining portion of Zielinski's testimony failed to indicate the source of the cadmium or that in its powdered state it was used in the "header department," wherein he claimed he and Jobe spent 70% of their work-day and "did not create dust there." RR. 139a.

Joseph D'Aurora worked for Gibson Electric from 1956 to 1984 in the powder room. He recalled using various products including cadmium, none of which was supplied by the appellees whose summary judgment motions had been granted. RR. 144a. Nor did the witness state the basis for his remark that cadmium was used more than silver and copper in the product mix. RR. 149a.

The third former employee whose account had been transcribed was Joseph Bauroia. He indicated working with Jobe 99% of the time, but he did not know if any of the appellees whose summary judgment motions were granted had their products on site or the frequency with which exposure occurred regarding cadmium.

Lastly, the individual who purchased materials for Gibson Electric from 1973 until July of 1984 (Albert Walter) was deposed by phone. He recalled that no records existed as to the product orders for cadmium-containing materials.

However, Walter had a personal recollection that silver cadmium oxide wire and cadmium oxide powder were purchased from 1973 until 1980 from Amax Corp. and from 1980 to 1984 from Asarco. As far as where the cadmium was used, Walter indicated the "powder mix" and "powder metal" areas. RR. 173a. He stated that the silver cadmium oxide wire was used in the "header department," but Walter did not know the physical location of the wire. RR. 169a.

Having reviewed all of the evidence in a light most favorable to the non-moving party/plaintiff, we find there is an insufficient nexus between any of the appellees' products and Jobe's worksite:

> The mere fact that [appellees' cadmium] products came into the facility does not show that the [decedent] ever breathed the [ ] specific [cadmium] product [ ] or that he worked where these [cadmium] products were delivered. .... Absent testimony of record that identifies [appellees'] products as being present in the [vicinity in which decedent worked], there is not even a reasonable inference that [decedent] was exposed to [appellees' cadmium] products.

*Bushless,* supra, 401 Pa.Super. at 365, 585 A.2d at 503, quoting *Eckenrod,* supra, 375 Pa.Super. at 192–93, 544 A.2d at 53.

Therefore, having failed to show the relationship between the plaintiff's decedent and the appellees' products, the plaintiff has left herself vulnerable to a summary judgment being entered for the appellees. *Id.* at 365–66, 585 A.2d at 504. The affirmance of the ruling is enhanced with the absence of sufficient evidence regarding the "frequency and regularity" with which the decedent was exposed to the appellees' products. In light of such a deficient record, we affirm the orders

86

appealed.[4]

Orders affirmed.

HUDOCK, J., did not participate in the consideration or decision of this matter.

**4.** With our affirmance of the orders on the basis of the appellant's failure to withstand the rigors of a motion for summary judgment, the last of her complaints—court error in not compelling the appellees to answer interrogatories as to precautionary measures taken at their worksites against cadmium—is held to be moot and/or meritless.